ELECTRONICALLY FILED - 2026 Jan 15 3:34 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

# EXHIBIT B

ELECTRONICALLY FILED - 2026 Jan 16 3:34 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

**Will Blount**

| | |
|---|---|
| **From:** | D. Craig Brown <craigbrown@craigbrownlawfirm.com> |
| **Sent:** | Tuesday, December 30, 2025 8:38 AM |
| **To:** | Hocker, Donald B.; Marybeth Mullaney; Matthew Gallo |
| **Cc:** | Nosizi Ralephata; Mary Grace Maybank; Bennett Kesler; Jay Jones; Robert Merting; Will Blount; Rene Dukes; Elizabeth Morrison; Robert Wyndham; Duda, William L.; Gable, Sarah M.; Zelda Kiser; Joel Milliken; Michelle Adams; Gina Horseman; Dina Wentzell; Michael Close; Martina Cattles |
| **Subject:** | RE: Berg v. Bryant - Order of Motions for 12-30 Hearing |
| **Attachments:** | Amended Memo in Opposition to TRO_In Camera Review.pdf |

Judge Hocker:

I have tried to file this Amended Memo but have been unable to do so for some reason. I will keep trying. I am sure it is the operator on this end. In any event, attached is my Amended memo. I went back and updated citations in the memo.

Craig

D. Craig Brown
The Law Office of D. Craig Brown, LLC
265 W. Evans St.
P.O. Box 461
Florence, SC 29501

Ph. 843.676.0169
Fax. 843.561.4857

**From:** Hocker, Donald B. <dhockerj@sccourts.org>
**Sent:** Monday, December 29, 2025 5:56 PM
**To:** Marybeth Mullaney <marybeth@mullaneylaw.net>; Matthew Gallo <mgallo@grsm.com>
**Cc:** Nosizi Ralephata <nralephata@grsm.com>; Mary Grace Maybank <marygrace@wyndhamlaw.com>; D. Craig Brown <craigbrown@craigbrownlawfirm.com>; Bennett Kesler <bennett@mullaneylaw.net>; Jay Jones <jjones@gwblawfirm.com>; Robert Merting <robert@kimandlahey.com>; Will Blount <wblount@grsm.com>; Rene Dukes <rdukes@saxtonstump.com>; Elizabeth Morrison <Elizabeth@whelanmellen.com>; Robert Wyndham <robert@wyndhamlaw.com>; Duda, William L. <bill.duda@ogletree.com>; Gable, Sarah M. <sarah.gable@ogletreedeakins.com>; Zelda Kiser <zkiser@grsm.com>; Joel Milliken <jmilliken@grsm.com>; Michelle Adams <maadams@grsm.com>; Gina Horseman <ghorseman@gwblawfirm.com>; Dina Wentzell <dwentzell@gwblawfirm.com>; Michael Close <michael@mullaneylaw.net>; Martina Cattles <mcattles@gwblawfirm.com>
**Subject:** RE: Berg v. Bryant - Order of Motions for 12-30 Hearing

Thanks to All!

**From:** Marybeth Mullaney <marybeth@mullaneylaw.net>
**Sent:** Monday, December 29, 2025 4:49 PM
**To:** Matthew Gallo <mgallo@grsm.com>
**Cc:** Hocker, Donald B. <dhockerj@sccourts.org>; Nosizi Ralephata <nralephata@grsm.com>; Mary Grace Maybank

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOR THE NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | ) | C/A NO.: 2025-CP-10-03124 |
| | ) | |
| Alexis Berg, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Patrick Bryant, John Osborne, Eric | ) | |
| Bowman, Pommer Group, LLC, | ) | |
| Assignment Desk Works, LLC and | ) | |
| GLT2, LLC, | ) | |
| | ) | **AMENDED** |
| Defendants. | ) | **THIRD-PARTY DEFENDANT NANCY** |
| | ) | **RUTH MACE'S ANSWER TO THIRD-** |
| | ) | **PARTY PLAINTIFF PATRICK** |
| Patrick Bryant, | ) | **BRYANT'S AMENDED THIRD PARTY** |
| | ) | **AMENDED COMPLAINT** |
| Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Nancy Ruth Mace, Melissa Britton, | ) | |
| and Alexis Berg, | ) | |
| | ) | |
| Third Party Defendants. | ) | |

THIRD PARTY DEFENDANT, NANCY RUTH MACE, BY AND THROUGH COUNSEL ANSWERS THIRD PARTY DEFENDANT PLAINTIFF'S AMENDED THIRD PARTY COMPLAINT AS FOLLOWS:

## FACTS COMMON TO ALL COUNTS

1. Each and every paragraph of Third-Party Plaintiff's Amended Third-Party Complaint not specifically admitted, qualified or explained is hereby denied.

2. Responding to Paragraph 1, Mace denies the characterization that she made claims "without any proof." Mace admits that she has made statements regarding events that occurred on or about October 26, 2018, based on materials she discovered on Bryant's phone, which she accessed with his express permission.

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

3.  Responding to Paragraph 2, Mace denies this paragraph in its entirety. Mace did not conspire with anyone to fabricate any assault. Mace discovered materials on Bryant's phone—which she accessed with his express permission—and subsequently reported what she discovered to law enforcement.

4.  Responding to Paragraph 3, Mace admits that she communicated with Berg regarding materials she discovered on Bryant's phone, including telling Berg she had seen a video from Bryant's phone. Mace admits that Berg instituted the present suit on or about June 10, 2025. Mace denies that her allegations are false. Mace accessed Bryant's phone with his express permission and reported what she discovered.

5.  Responding to Paragraph 4, Mace denies this paragraph in its entirety. Mace did not concoct a false narrative, did not blackmail Bryant, and did not act to ruin Bryant for personal gain. Mace discovered materials on Bryant's phone—which she accessed with his express permission—and reported what she discovered to law enforcement.

6.  Responding to Paragraph 5, Mace denies that Berg is a pawn in any scheme. Mace denies that no assault took place; Mace viewed a video on Bryant's phone depicting an unconscious woman being sexually assaulted. Mace lacks sufficient knowledge or information to form a belief as to the truth of the allegations concerning Britton's motives or Berg's fault and therefore denies the same.

7.  Responding to Paragraph 6, Mace denies this paragraph. This paragraph states a legal conclusion to which no response is required. To the extent a response is required, Mace denies that her actions were solely personal or for personal gain and denies that she is judicially estopped from seeking certification that her alleged actions were within the scope of her employment as a United States Congresswoman pursuant to the Westfall Act, 28 U.S.C. §2679.

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

8.  Responding to Paragraph 7, Mace denies this paragraph in its entirety. Mace denies that Bryant is a victim. Mace denies that she falsely branded Bryant a rapist and voyeur; Mace viewed multiple videos and photographs on Bryant's phone depicting what appeared to be unconscious women being sexually assaulted. Mace denies weaponizing falsehoods, fabricating criminal allegations, or abusing private relationships. The remainder of this paragraph consists of argument and rhetoric to which no response is required. To the extent a response is required, it is denied.

9.  Responding to Paragraph 8, Mace admits that Bryant is a resident of Charleston County, South Carolina and that Bryant is the founder of Harbor Freight Entrepreneur, a past Chairman of the Charleston Chamber of Commerce, upon information and belief. Mace lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

10. Responding to Paragraph 9, Mace denies that she is a resident of Charleston County, South Carolina. Mace is a resident of Berkeley County, South Carolina. Mace admits that she has been sued in her personal capacity in this action but reserves all defenses, including but not limited to certification that her alleged actions were within the scope of her employment as a United States Congresswoman pursuant to the Westfall Act, 28 U.S.C. §2679, any defenses available under the Federal Tort Claims Act, and that her actions are protected by the Speech or Debate Clause, U.S. Const. art. I, §6, cl. 1.

11. Responding to Paragraph 10, Mace admits that Defendant Britton is a resident of Charleston County, upon information and belief.

12. Responding to Paragraph 11, Mace admits that Defendant Berg is a former resident of Charleston County, now residing in Minnesota, upon information and belief.

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

13. Responding to Paragraph 12, Mace admits that venue is proper in Charleston County, South Carolina pursuant to S.C. Code Ann. § 15-7-30. Mace denies that all acts alleged herein occurred within Charleston County, as certain of Mace's alleged conduct occurred elsewhere, including in Washington, D.C., in connection with her duties as a United States Congresswoman.

14. Responding to Paragraph 13, this paragraph pertains to Defendant Berg and does not require a response from Mace. To the extent a response is required, this paragraph contains legal conclusions to which no response is required. To the extent factual allegations are contained herein, Mace lacks sufficient knowledge or information to form a belief as to the truth of such allegations and therefore denies the same.

15. Responding to Paragraph 14, this paragraph contains legal conclusions to which no response is required. To the extent factual allegations are contained herein, Mace denies that she wrongfully converted Bryant's phone and data, denies that she manipulated data, denies that she blackmailed Bryant, and denies that she conspired with Britton to fabricate an alleged assault. Mace accessed Bryant's phone with his express permission after Bryant added her thumbprint to his phone and told her she could access it whenever she wanted. Mace reported what she discovered to law enforcement.

16. Responding to Paragraph 15, Mace admits this paragraph.

17. Responding to Paragraph 16, Mace admits this paragraph.

18. Responding to Paragraph 17, Mace denies that she became "paranoid." Mace admits that in the summer and fall of 2023, she had concerns that Bryant was being unfaithful based upon numerous reasons.

19. Responding to Paragraph 18, Mace admits that the parties experienced strain and conflict in their relationship but denies that this strain arose merely from "suspicions."

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

The significant strain and conflict in the relationship arose based upon numerous reasons.

20. Responding to Paragraph 19, Mace admits that the deterioration of the parties' relationship gave rise to disputes. Mace denies that the "events" forming the basis of this action are accurately characterized by Bryant elsewhere in the Third-Party Complaint.

21. Responding to Paragraph 20, Mace denies that her suspicions were "unfounded," as Bryant was on a dating app during their relationship. Mace admits that in the fall of 2023 she sought access to Bryant's phone. Bryant thereafter gave Mace express permission to access his phone, added her thumbprint to his phone, and told her she could access it whenever she wanted.

22. Responding to Paragraph 21, Mace denies that Bryant refused to provide her with access to his phone. Mace denies that Bryant declined to provide his passcode, fingerprint, or any other means of access to the phone. To the contrary, Bryant gave Mace express permission to access his phone, added her thumbprint to his phone, and told her she could access it whenever she wanted. Bryant also provided Mace with a four-digit code for his safe, which Bryant chose to use for hidden folders on his phone. Mace admits that she placed an air tag on Bryant's car for one day in August 2023. Mace admits that she attempted to access Bryant's laptop, but this occurred after she discovered videos and photographs on Bryant's phone depicting what appeared to be an unconscious woman being sexually assaulted after she discovered she and other women, including some of his female employees and wives of some of his male employees, and other women were filmed on a hidden camera without their apparent knowledge, permission or consent.

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

23. Responding to Paragraph 22, Mace admits that she communicated with Eric Bowman on occasion, but rarely, during the summer or fall of 2023. Upon information and belief, Mace admits that Bowman is a Charleston County resident and a business associate of Bryant. The remaining allegations of said paragraph are denied.

24. Responding to Paragraph 23, Mace denies that she asked Bowman if he knew anyone who could "hack into" Bryant's phone. Mace admits that in August 2023 she asked Bowman about hiring a private investigator. Mace admits that she later told Bowman she no longer needed one or had taken care of it. Mace denies knowledge of changing message settings on her communications with Bowman to automatically delete after one day. Mace lacks sufficient knowledge or information as to whether such settings were ever enabled or by whom. The remaining allegations of said paragraph are denied.

25. Responding to Paragraph 24, Mace admits that she inquired about hiring a private investigator. Mace denies the remaining allegations of said paragraph.

26. Responding to Paragraph 25, Mace admits that she and Bryant were engaged to be married and living together during the time period referenced herein. The remaining allegations of said paragraph are denied.

27. Responding to Paragraph 26, Mace admits that on or about the morning of November 13, 2023, she accessed Bryant's phone while he was asleep. Mace denies that this was "without his permission." Bryant had given Mace express permission to access his phone, he added her thumbprint to his phone and told her she could access it whenever she wanted. Bryant's phone, however, was on his nightstand when he awoke and not in Mace's possession.

28. Responding to Paragraph 27, Mace denies that Bryant had to "retrieve" his phone from her on the morning of November 13, 2023, because the phone was on his

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

nightstand when he awoke. Mace denies that she "hacked" the phone. Mace accessed hidden folders on Bryant's phone using a four-digit code that Bryant had provided to her for his safe; Bryant chose to use the same code for both his safe and the hidden folder on his phone. Mace lacks sufficient knowledge or information to form a belief as to what Bryant discovered upon reviewing his phone or when he became concerned and therefore denies those allegations. Mace denies that she downloaded an application called "Mr. Fone" on the morning of November 13, 2023.

29. Responding to Paragraph 28, Mace lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

30. Responding to Paragraph 29, Mace denies the allegations of this paragraph.

31. Responding to Paragraph 30, Mace admits that data from Bryant's phone was transferred to another device. Mace denies that this was done "without consent" or that it violated Bryant's privacy rights. Bryant gave Mace express permission to access his phone, added her thumbprint to his phone, and told her she could access it whenever she wanted. Mace subsequently provided this data to law enforcement.

### MACE'S ATTEMPTS TO BLACKMAIL BRYANT

32. Responding to Paragraph 31, Mace denies meeting with Wesley Donehue on or about November 7-9, 2023.

33. Responding to Paragraph 32, Mace denies that she told Donehue she had "hacked" Bryant's devices. Mace accessed Bryant's phone with his express permission after Bryant added her thumbprint to his phone and told her she could access it whenever she wanted. Mace admits that she told Donehue that Bryant had filmed women without their consent. Mace denies stating that she would use the information to "get her houses."

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

34.  Responding to Paragraph 33, Mace denies this paragraph.

35.  Responding to Paragraph 34, Mace denies that Donehue urged her to report what she found on Bryant's phone to the authorities. Mace denies that she refused to report it. Mace denies stating "I'm going to use this information to get my houses." Mace reported what she discovered directly to law enforcement.

36.  Responding to Paragraph 35, Mace admits that she told Donehue she felt unsafe around Bryant but not during a November 2023 meeting. Mace admits that she traveled to the Caribbean with Bryant. Mace denies stating she was going to get a 'free Caribbean vacation.' Mace admits that while on the trip she intended to continue reviewing Bryant's phone, which she had express permission to access.

37.  Responding to Paragraph 36, Mace denies meeting with Donehue in November 2023. Mace denies that this characterization is accurate or complete. Mace is not required to have disclosed her future legislative intentions during a private conversation with a political consultant. The remaining allegations of said paragraph are denied.

38.  Responding to Paragraph 37, Mace denies this paragraph.

39.  Responding to Paragraph 38, Mace admits that on November 13, 2023, a preservation letter was sent to Bryant from her attorneys. Mace admits that the letter addressed preservation of evidence and referenced potential violations of South Carolina's voyeurism statute. The letter speaks for itself, and Mace denies any characterization inconsistent with its contents.

40.  Responding to Paragraph 39, Mace admits that she communicated with Bowman on or about November 30, 2023, regarding a constituent-related request. The remaining allegations of said paragraph are denied.

41.  Responding to Paragraph 40, Mace admits that she communicated with Bryant in November 2023. To the extent Bryant possesses Verizon records or screenshots,

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

those documents speak for themselves. The remaining allegations of said paragraph are denied.

42. Responding to Paragraph 41, Mace objects to this paragraph on the grounds that it seeks to disclose confidential mediation communications in violation of Rule 8 of the South Carolina Alternative Dispute Resolution Rules. Subject to and without waiving this objection, Mace admits that she and Bryant participated in pre-suit mediation on January 8, 2024, regarding the Properties. Mace denies the remaining allegations in this paragraph.

## THE OCTOBER 2018 POOL INCIDENT AT BRITTON'S RESIDENCE

43. Responding to Paragraph 42, Mace was not present at the alleged gathering. Mace lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

44. Responding to Paragraph 43, Mace was not present at the alleged incident. Mace lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

45. Responding to Paragraph 44, this paragraph pertains to Defendant Britton's alleged conduct, not Mace. Mace lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

46. Responding to Paragraph 45, Mace disputes Bryant's denial of any alleged assault or wrongdoing; Mace viewed multiple videos and photographs on Bryant's phone depicting what appeared to be an unconscious woman being sexually assaulted. The remaining allegations in this paragraph pertain to Defendant Britton's alleged conduct. Mace was not present at the alleged gathering and lacks sufficient knowledge or

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

information to form a belief as to the truth of the allegations regarding Britton's conduct and therefore denies the same.

47.   Responding to Paragraph 46, this paragraph pertains to Defendant Britton's alleged conduct, not Mace. Mace lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

48.   Responding to Paragraph 47, Mace admits she was in contact with Britton in early 2024. Mace denies that any conspiracy was formed or that there was any coordinated effort to harm Bryant. The remaining allegations in this paragraph pertain to Britton's conduct. Mace lacks sufficient knowledge or information to form a belief as to the truth of those allegations and therefore denies the same.

49.   Responding to Paragraph 48, upon information and belief, Mace admits she met with Britton in early 2024. Mace denies that no video exists; Mace viewed multiple photos and videos on Bryant's phone depicting what appeared to be an unconscious woman being sexually assaulted. Mace denies any conspiracy to frame or defraud Bryant, Bowman, or Osborne. The remaining allegations of said paragraph are denied.

### MACE CONTACTS BERG

50.   Responding to Paragraph 49, Mace denies that any conspiracy existed or that Berg was targeted. Mace lacks sufficient knowledge or information to form a belief as to the truth of the allegations regarding Berg's employment history or personal characteristics and therefore denies the same.

51.   Responding to Paragraph 50, Mace admits that on or about April 6, 2024, she called Berg. Mace admits that during this call she told Berg she had seen a video on Bryant's phone depicting Berg unconscious. Mace denies that she used the term 'gang rape' or 'gang raped.' Mace admits that she identified the location as Eric Bowman's home and

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2026CP1003124

identified the men she believed were involved: Bryant, Bowman and John Osborne. Mace denies any characterization that her statements were false.

52.  Responding to Paragraph 51, Mace admits that Berg conveyed to Mace that she had no independent memory of the alleged events because she was unconscious. The remaining allegations of said paragraph are denied.

53.  Responding to Paragraph 52, Mace denies that she gave varying versions of events. Mace admits that she provided information to law enforcement and that she possessed materials. Mace denies that she urged Berg to undergo medical testing. Mace admits that Berg stated during this call that she had no memory of any assault and expressed disbelief. The remaining allegations of said paragraph are denied.

## DEFAMATORY STATEMENTS BY BERG

54.  Responding to Paragraph 53, Mace lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

55.  Responding to Paragraph 54, Mace lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

56.  Responding to Paragraph 55, Mace lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

57.  Responding to Paragraph 56, Mace lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

58.     Responding to Paragraph 57, Mace lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

59.     Responding to Paragraph 58, Mace lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

60.     Responding to Paragraph 59, Mace lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

61.     Responding to Paragraph 60, Mace lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

62.     Responding to Paragraph 61, Mace lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

63.     Responding to Paragraph 62, Mace lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

64.     Responding to Paragraph 63, Mace lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

## TORTIOUS INTERFERENCE BY BERG

65.     Responding to Paragraph 64, upon information and belief, Mace admits that Berg previously worked for ADW. Mace lacks sufficient knowledge or information to form

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

a belief as to the truth of the allegations regarding Berg's specific position and therefore denies the same.

66.　Responding to Paragraph 65, Mace lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

67.　Responding to Paragraph 66, Mace denies the allegations in this paragraph.

68.　Responding to Paragraph 67, Mace denies the allegations in this paragraph.

69.　Responding to Paragraph 68, Mace denies the allegations in this paragraph.

## COUNTER-CLAIM AGAINST BERG

70.　Responding to Paragraph 69, Mace incorporates by reference her responses to all preceding paragraphs as if fully set forth herein.

71.　Responding to Paragraph 70, upon information and belief, Mace admits that venue is proper in Charleston County.

72.　Responding to Paragraph 71, upon information and belief, Mace admits that this Court has subject matter jurisdiction over this matter.

## COUNT I – DEFAMATION (Berg)

73.　Responding to Paragraph 72, Mace incorporates by reference her responses to the preceding paragraphs as if fully set forth herein.

74.　Responding to Paragraph 73, Mace denies that her claims regarding Bryant were false or defamatory. Mace lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph regarding Berg's statements and therefore denies the same.

75.　Responding to Paragraph 74, the court filings referenced herein speak for themselves. Mace denies that the allegations contained therein were false. Mace lacks sufficient

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

76.    Responding to Paragraph 75, this paragraph is directed at Berg, not Mace. To the extent a response is required from Mace, this paragraph states legal conclusions to which no response is required. Statements made in pleadings are absolutely privileged under South Carolina law and cannot form the basis for a defamation claim. To the extent factual allegations are contained herein, Mace lacks sufficient knowledge or information to form a belief as to the truth of the allegations regarding Berg's court filings and therefore denies the same.

77.    Responding to Paragraph 76, this paragraph is directed at Berg, not Mace. To the extent a response is required from Mace, this paragraph states legal conclusions to which no response is required. Statements made in pleadings are absolutely privileged under South Carolina law and cannot form the basis for a defamation claim. To the extent factual allegations are contained herein, Mace lacks sufficient knowledge or information to form a belief as to the truth of the allegations regarding Berg's court filings and therefore denies the same.

78.    Responding to Paragraph 77, this paragraph is directed at Berg, not Mace. To the extent a response is required from Mace, this paragraph states a legal conclusion to which no response is required.

79.    Responding to Paragraph 78, this paragraph is directed at Berg, not Mace. To the extent a response is required from Mace, Mace lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

80.    Responding to Paragraph 79, this paragraph is directed at Berg, not Mace. To the extent a response is required from Mace, this paragraph states a legal conclusion to which no response is required.

81.    Responding to Paragraph 80, this paragraph is directed at Berg, not Mace. To the extent a response is required from Mace, Mace denies that Berg's statements were false. Mace lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

82.    Responding to Paragraph 81, this paragraph is directed at Berg, not Mace. To the extent a response is required from Mace, Mace denies that Bryant is entitled to any damages. Mace lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

83.    Responding to Paragraph 82, Mace denies that any conspiracy existed or that she devised any plan to convince ADW employees to turn on Bryant or leave the company. Mace denies that Berg's action is frivolous and denies that there is no proof of any alleged assault.

## COUNT II – TORTIOUS INTERFERENCE (Berg)

84.    Responding to Paragraph 83, Mace incorporates by reference her responses to the preceding paragraphs as if fully set forth herein.

85.    Responding to Paragraph 84, Mace denies the allegations in this paragraph.

86.    Responding to Paragraph 85, Mace denies the allegations in this paragraph.

87.    Responding to Paragraph 86, Mace denies the allegations in this paragraph.

88.    Responding to Paragraph 87, this paragraph is directed at Berg, not Mace. To the extent a response is required from Mace, this paragraph states a legal conclusion to which no response is required.

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2026CP1003124

89.     Responding to Paragraph 88, Mace denies the allegations in this paragraph.

90.     Responding to Paragraph 89, Mace denies the allegations in this paragraph.

## COUNT III – CIVIL CONSPIRACY (Berg)

91. Responding to Paragraph 90, Mace incorporates by reference her responses to all preceding paragraphs as if fully set forth herein.

92.     Responding to Paragraph 91, Mace denies the allegations in this paragraph.

93.     Responding to Paragraph 92, Mace denies the allegations in this paragraph.

94.     Responding to Paragraph 93, Mace denies that any conspiracy existed. Mace lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph regarding Berg's communications and therefore denies the same.

95. Responding to Paragraph 94, Mace denies the allegations in this paragraph.

## BRYANT'S THIRD-PARTY CLAIMS AGAINST MACE AND BRITTON

96. Responding to Paragraph 95, Mace incorporates by reference her responses to all preceding paragraphs as if fully set forth herein.

97. Responding to Paragraph 96, upon information and belief, Mace admits that venue is proper in Charleston County.

98.     Responding to Paragraph 97, upon information and belief, Mace admits that this Court has subject matter jurisdiction over this matter.

## COUNT I – DEFAMATION (Mace)

99.     Responding to Paragraph 98, Mace incorporates by reference her responses to all preceding paragraphs as if fully set forth herein.

100.    Responding to Paragraph 99, Mace admits she made statements to Donehue regarding Bryant. Mace denies that those statements were false or defamatory.

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2026CP1003124

101. Responding to Paragraph 100, this paragraph states legal conclusions to which no response is required. To the extent factual allegations are contained herein, Mace denies them.

102. Responding to Paragraph 101, this paragraph states legal conclusions to which no response is required. To the extent factual allegations are contained herein, Mace denies that her statements were false or made with reckless disregard for the truth.

103. Responding to Paragraph 102, the characterization of whether Mace's statements were made outside the scope of her employment states a legal conclusion to which no response is required. Mace denies that her statements were outside the scope of her duties as a United States Congresswoman. The timing and subject matter of legislation introduced by Mace is a matter of public record. Mace denies that she had not reported to law enforcement. Mace reported Bryant's conduct to the South Carolina Law Enforcement Division, which opened an investigation on or about December 14, 2023.

104. Responding to Paragraph 103, Mace denies the allegations in this paragraph.

105. Responding to Paragraph 104, Mace denies that her statements were false or defamatory. Mace denies that Bryant is entitled to any damages. Mace lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

## COUNT II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (Mace)

106. Responding to Paragraph 105, Mace incorporates by reference her responses to all preceding paragraphs as if fully set forth herein.

107. Responding to Paragraph 106, Mace admits that she accessed Bryant's phone and obtained photographs and other data. Mace denies that she did so "without

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

authorization." Bryant gave Mace express permission to access his phone, added her thumbprint to his phone, and told her she could access it whenever she wanted.

108.    Responding to Paragraph 107, Mace denies the allegations in this paragraph. Mace had express authorization to access Bryant's phone.

109.    Responding to Paragraph 108, Mace denies the allegations in this paragraph. Mace did not improperly obtain any information. The information Mace discovered on Bryant's phone was not innocuous; it depicted what appeared to be an unconscious woman being sexually assaulted and other women photographed or filmed without their knowledge or consent. Mace denies that she threatened Bryant or conditioned any disclosure on transfer of ownership of the Properties.

110.    Responding to Paragraph 109, Mace denies this paragraph. Bryant gave Mace express permission to access his phone, added her thumbprint to his phone, and told her she could access it whenever she wanted. Mace's conduct was not intentional, reckless, or carried out with knowledge or substantial certainty that it would cause Bryant severe emotional distress. Mace discovered materials on Bryant's phone depicting what appeared to be an unconscious woman being sexually assaulted and reported what she discovered directly to law enforcement.

111.    Responding to Paragraph 110, Mace denies the allegations in this paragraph.

112.    Responding to Paragraph 111, Mace denies the allegations in this paragraph. Mace denies that Bryant is entitled to any damages.

113.    Responding to Paragraph 112, Mace denies this paragraph. The characterization of whether Mace's actions related to her position as a United States Congresswoman states a legal conclusion to which no response is required. Mace denies that her motivation was to coerce Bryant into relinquishing ownership of the Properties. Mace discovered materials on Bryant's phone depicting what appeared to be an unconscious

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

woman being sexually assaulted, other material that constituted voyeurism and possible CSAM, and reported what she discovered to law enforcement.

## COUNT III – CONVERSION (Mace)

114.   Responding to Paragraph 113, Mace incorporates by reference her responses to all preceding paragraphs as if fully set forth herein.

115.   Responding to Paragraph 114, Mace admits that Bryant had a legal right to ownership of his phone. Mace denies that Bryant denied each and every request by Mace to access and/or possess his phone. To the contrary, Bryant gave Mace express permission to access his phone, added her thumbprint to his phone, and told her she could access it whenever she wanted.

116.   Responding to Paragraph 115, Mace denies the allegations in this paragraph. Mace had express permission to access Bryant's phone and did not wrongfully convert or retain it.

117.   Responding to Paragraph 116, Mace denies the allegations in this paragraph. Mace had express permission to access Bryant's phone. To the extent this paragraph references a spoliation charge, this states a legal conclusion to which no response is required.

118.   Responding to Paragraph 117, Mace denies the allegations in this paragraph.

119.   Responding to Paragraph 118, Mace denies this paragraph. The characterization of whether Mace's actions related to her position as a United States Congresswoman states a legal conclusion to which no response is required. Mace denies that her motivation was to coerce Bryant into relinquishing ownership of the Properties. Mace discovered materials on Bryant's phone depicting what appeared to be an unconscious woman being sexually assaulted, other materials that constituted voyeurism and possible CSAM,   and reported what she discovered to law enforcement.

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

## COUNT IV – INVASION OF PRIVACY (Mace)

120. Responding to Paragraph 119, Mace incorporates by reference her responses to all preceding paragraphs as if fully set forth herein.

121. Responding to Paragraph 120, Mace denies this paragraph. Bryant did not have a reasonable expectation of privacy as to Mace, given that Bryant gave Mace express permission to access his phone, added her thumbprint to his phone, and told her she could access it whenever she wanted.

122. Responding to Paragraph 121, Mace admits that she accessed Bryant's phone and obtained photographs and information. Mace denies that she did so "without Bryant's knowledge or consent." Bryant gave Mace express permission to access his phone, added her thumbprint to his phone, and told her she could access it whenever she wanted. The information

123. Responding to Paragraph 122, Mace denies the allegations in this paragraph.

124. Responding to Paragraph 123, Mace admits she shared limited information regarding what she discovered on Bryant's phone with Donehue in order to enlist his help to inform a potential victim whom Mace believes was photographed and/or filmed without her knowledge or consent. To the extent this paragraph alleges Mace was required to obtain Bryant's consent to share such information, this states a legal conclusion to which no response is required. Mace lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations and therefore denies the same.

125. Responding to Paragraph 124, Mace denies the allegations in this paragraph.

126. Responding to Paragraph 125, Mace denies the allegations in this paragraph.

127. Responding to Paragraph 126, Mace denies the allegations of this paragraph.

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

128.    Responding to Paragraph 127, Mace denies this paragraph. The characterization of whether Mace's actions related to her position as a United States Congresswoman states a legal conclusion to which no response is required. Mace denies that her sole motivation was to coerce Bryant into relinquishing ownership of the Properties. Mace discovered materials on Bryant's phone depicting what appeared to be an unconscious woman being sexually assaulted, other materials that constituted voyeurism and possible CSAM, and reported what she discovered to law enforcement.

## COUNT V – CIVIL CONSPIRACY (Mace and Britton)

129.    Responding to Paragraph 128, Mace incorporates by reference her responses to all preceding paragraphs as if fully set forth herein.

130.    Responding to Paragraph 129, Mace denies the allegations in this paragraph.

131.    Responding to Paragraph 130, Mace admits that in November 2023 she was in a personal relationship with Bryant. Mace denies that she unlawfully accessed Bryant's phone or devices. Bryant gave Mace express permission to access his phone, added her thumbprint to his phone, and told her she could access it whenever she wanted. Mace admits she obtained information from Bryant's phone. Mace denies that she sought to use any images as leverage to obtain ownership of the Properties. The timing of Mace's report to law enforcement and any contemplation of legislation are addressed elsewhere. Mace discovered materials on Bryant's phone depicting what appeared to be an unconscious woman being sexually assaulted, and other materials that constituted voyeurism and possible CSAM, and reported what she discovered directly to law enforcement.

132.    Responding to Paragraph 131, Mace denies the allegations in this paragraph.

133.    Responding to Paragraph 132, Mace denies that any conspiracy existed. Mace denies that her actions were motivated by personal retaliation or financial gain. The

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2026CP1003124

characterization of whether Mace's actions related to any legislative or governmental purpose states a legal conclusion to which no response is required. Mace reported what she discovered on Bryant's phone directly to law enforcement. The timing of that report was affected by factors unrelated to any alleged improper motive.

134. Responding to Paragraph 133, Mace denies the allegations in this paragraph.

135. Responding to Paragraph 134, Mace denies the allegations in this paragraph.

136. Responding to Paragraph 135, Mace denies the allegations in this paragraph.

137. Responding to Paragraph 136, Mace denies that any conspiracy existed or that she devised any plan to convince ADW employees to turn on Bryant or leave the company. Mace denies that Berg's action is frivolous and denies that there is no proof of any alleged assault.

138. Responding to Paragraph 137, Mace denies that any conspiracy existed. Mace lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph regarding Berg's communications and therefore denies the same.

139. Responding to Paragraph 138, Mace denies the allegations in this paragraph.

## COUNT VI – AIDING AND ABETTING CRIMINAL CONDUCT (Britton)

140. Responding to Paragraph 139, Mace incorporates by reference her responses to all preceding paragraphs as if fully set forth herein.

141. Responding to Paragraphs 140 – 145, said paragraphs are directed at Defendant Britton, not Mace. To the extent any response is required from Mace, Mace lacks sufficient knowledge or information to form a belief as to the truth of said allegations in these paragraphs regarding Britton's alleged conduct and therefore denies them.

## FOR A FIRST AFFIRMATIVE DEFENSE

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

142. Bryant's Amended Third-Party Complaint fails to state facts sufficient to constitute a cause of action against Mace upon which relief can be granted and therefore should be dismissed pursuant to Rule 12(b)(6), SCRCP.

### FOR A SECOND AFFIRMATIVE DEFENSE

143. Mace's statements regarding Bryant were true. Mace viewed multiple videos and photographs on Bryant's phone depicting what appeared to be an unconscious woman being sexually assaulted, other materials that constituted voyeurism and possible CSAM. Mace reported what she discovered directly to law enforcement. Truth is an absolute defense to defamation.

### FOR A THIRD AFFIRMATIVE DEFENSE

144. To the extent Bryant's defamation claims are based on statements made in judicial pleadings or filings, such statements are absolutely privileged under South Carolina law and cannot form the basis for a defamation claim.

### FOR A FOURTH AFFIRMATIVE DEFENSE

145. Mace's statements to law enforcement and to others with a legitimate interest in the subject matter were made in good faith and are protected by qualified privilege under South Carolina law.

### FOR A FIFTH AFFIRMATIVE DEFENSE

146. Bryant's claims for conversion, invasion of privacy, and related torts fail because Bryant gave Mace express permission to access his phone, added her thumbprint to his phone, and told her she could access it whenever she wanted. Mace's access to Bryant's phone was authorized and consensual.

### FOR A SIXTH AFFIRMATIVE DEFENSE

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2026CP1003124

147.    Bryant's claim for intentional infliction of emotional distress fails because Mace's conduct does not rise to the level of extreme and outrageous conduct required to sustain such a claim under South Carolina law.

### FOR A SEVENTH AFFIRMATIVE DEFENSE

148.    Bryant's civil conspiracy claims fail because no conspiracy existed between Mace and any other party. Mace did not enter into any agreement to commit an unlawful act or to accomplish a lawful act by unlawful means.

### FOR AN EIGHTH AFFIRMATIVE DEFENSE

149.    To the extent Mace's actions relate to her legislative functions as a United States Congresswoman, including but not limited to her work on legislation addressing voyeurism and sexual assault, such actions are protected by the Speech or Debate Clause of the United States Constitution, U.S. Const. art. I, § 6, cl. 1.

### FOR A NINTH AFFIRMATIVE DEFENSE

150.    Bryant's claims are barred by the doctrine of unclean hands. Bryant's own alleged conduct, including the recording of women without their consent, precludes him from seeking equitable relief or damages arising from Mace's discovery and reporting of that conduct.

### FOR A TENTH AFFIRMATIVE DEFENSE

151.    Bryant failed to take reasonable steps to mitigate his alleged damages, and any recovery should be reduced accordingly.

### FOR AN ELEVENTH AFFIRMATIVE DEFENSE

152.    Bryant's claims are barred to the extent they seek to impose liability for Mace's speech on matters of public concern, which is protected by the First Amendment to the United States Constitution.

### FOR A TWELFTH AFFIRMATIVE DEFENSE

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

153.  Mace acted in good faith in discovering and reporting what appeared to be criminal activity depicted on Bryant's phone. Mace's actions in reporting suspected criminal conduct to law enforcement are protected under South Carolina law and public policy.

### FOR A THIRTEENTH AFFIRMATIVE DEFENSE

154.  To the extent Bryant is a public figure or limited purpose public figure, his defamation claims fail because Mace did not act with actual malice. Mace did not make any statements with knowledge of their falsity or with reckless disregard for the truth.

### FOR A FOURTEENTH AFFIRMATIVE DEFENSE

155.  To the extent applicable, Bryant's own conduct contributed to any alleged damages he claims to have suffered, and any recovery should be reduced or barred accordingly.

### FOR A FIFTEENTH AFFIRMATIVE DEFENSE

156.  Mace reserves the right to assert additional affirmative defenses as discovery progresses and additional facts become known.

### FOR A SIXTEENTH AFFIRMATIVE DEFENSE

157.  Mace reserves her right to seek certification under the Westfall Act, 28 U.S.C. § 2679, that she was acting within the scope of her employment as a United States Congresswoman at all times relevant to Bryant's claims. Upon such certification, the United States shall be substituted as the party defendant.

### FOR A SEVENTEENTH AFFIRMATIVE DEFENSE

158.  Bryant's invasion of privacy claim fails because Bryant had no reasonable expectation of privacy as to Mace. Bryant gave Mace express permission to access his phone, added her thumbprint to his phone, and told her she could access it whenever she wanted. Bryant thereby waived any expectation of privacy in the contents of his phone as to Mace.

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

## FOR AN EIGHTEENTH AFFIRMATIVE DEFENSE

159.   Mace's actions were taken for a legitimate purpose. Mace discovered materials on Bryant's phone depicting what appeared to be an unconscious woman being sexually assaulted and took steps to identify the victims and report the conduct to law enforcement. Mace's actions were justified and undertaken to protect victims of alleged criminal conduct.

## FOR A NINETEENTH AFFIRMATIVE DEFENSE

160.   To the extent Mace was acting within the scope of her employment as a United States Congresswoman, Bryant's exclusive remedy, if any, lies against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680. Certain claims asserted by Bryant, including defamation and intentional torts, are excepted from the FTCA's waiver of sovereign immunity under 28 U.S.C. § 2680 and are therefore barred.

## RESPONSE TO BRYANT'S PRAYER FOR RELIEF

Mace denies that Bryant is entitled to any of the relief requested in his Prayer for Relief. Mace reserves all defenses, including certification that her alleged actions were within the scope of her employment as a United States Congresswoman pursuant to the Westfall Act, 28 U.S.C. § 2679, any defenses under the Federal Tort Claims Act, absolute privilege for statements made in judicial proceedings, qualified privilege, and any protections afforded by the Speech or Debate Clause, U.S. Const. art. I, § 6, cl. 1.Respectfully submitted,

## MACE'S PRAYER FOR RELIEF

WHEREFORE, having answered Bryant's Amended Third-Party Complaint, Third-Party Defendant Nancy Ruth Mace respectfully requests that this Court:

a. Dismiss Bryant's Amended Third-Party Complaint in its entirety and with prejudice;

b. Enter judgment in favor of Mace on all claims asserted against her;

c. Award Mace her costs and attorney's fees incurred in defending this action;

d. Grant such other and further relief as this Court deems just and proper;

e. Mace reserves the right to amend this Answer and to assert counterclaims as discovery

progresses and additional facts become known; and

f. Mace demands a trial by jury on all issues so triable.


                              THE LAW OFFICE OF D. CRAIG BROWN, LLC

                  By:     s/D. Craig Brown
                          D. Craig Brown, Esq.
                          265 W. Evans St.
                          Florence, SC 29501
                          (843) 676-0169
                          craigbrown@craigbrownlawfirm.com

                          Attorney for Third-Party Defendant, Nancy Ruth Mace

January 15, 2026
Florence, SC

ELECTRONICALLY FILED - 2026 Jan 15 3:45 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

ELECTRONICALLY FILED - 2026 Jan 15 3:56 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
) FOR THE NINTH JUDICIAL CIRCUIT
COUNTY OF CHARLESTON ) C/A NO.: 2025-CP-10-03124

Alexis Berg, )
)
Plaintiff, )
)
vs. )
)
Patrick Bryant, John Osborne, Eric )
Bowman, Pommer Group, LLC, )
Assignment Desk Works, LLC and )
GLT2, LLC, )
)
Defendants. )
) **AMENDED**
) **THIRD-PARTY DEFENDANT NANCY**
Patrick Bryant, ) **RUTH MACE'S MEMORANDUM IN**
) **OPPOSITION TO THIRD-PARTY**
Third-Party Plaintiff, ) **PLAINTIFF PATRICK BRYANT'S**
) **MOTION FOR TEMPORARY**
) **RESTRAINING ORDER AND**
vs. ) **MOTION TO VACATE OR**
) **MODIFY GAG ORDER AND**
Nancy Ruth Mace, Melissa Britton, ) **RENEWED MOTION FOR IN**
and Alexis Berg, ) **CAMERA REVIEW**
)
Third-Party Defendants. )

This memorandum is respectfully submitted on behalf of Third-Party Defendant, the

Honorable Nancy Ruth Mace ("Congresswoman Mace"), a sitting United States

Congresswoman and candidate for Governor of South Carolina, in opposition to Third-Party

Plaintiff Patrick Bryant's Motion for Temporary Restraining Order and in response to the

Court's *sua sponte* Gag Order dated November 26, 2025 and which was extended on

December 18, 2025.

The Gag Order broadly prohibits all parties, their representatives, and counsel from

making any public comment about any aspect of this case, effectively silencing

Congresswoman Mace's ability to communicate with her constituents and the public on

matters of significant public concern, including her legislative efforts to address issues raised

by this litigation. In addition, the Order was issued without specific factual findings or

ELECTRONICALLY FILED - 2026 Jan 15 3:56 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

procedural safeguards. As drafted, the Order is a violation not only of Congresswoman Mace's fundamental rights to freedom of speech and due process but also, because the Congresswoman is a federal legislator, the protections afforded her by the Speech or Debate Clause of the United States Constitution.

Similarly, Bryant's Motion for Temporary Restraining Order seeks to enjoin Congresswoman Mace from disseminating information and materials that relate to allegations of serious criminal conduct, matters that are indisputably of public interest and concern to her constituents. The Motion fails for multiple reasons, starting with the fact that it is barred by the doctrine of laches due to Bryant's two-year delay in seeking such relief. Moreover, the Motion does not meet the stringent legal standards given the extraordinary relief that it seeks, which if granted, would improperly impose an unconstitutional prior restraint on protected political speech and would violate the Speech or Debate Clause.

For these reasons, Congresswoman Mace respectfully requests that the Court (i) vacate or substantially modify its November 26, 2025 Gag Order to ensure compliance with all applicable constitutional protections and procedural due process and (ii) deny Bryant's Motion for Temporary Restraining Order. The Court should also deny Bryant's Renewed Motion for In Camera Review, which seeks extraordinary judicial intervention where adequate discovery mechanisms exist.

## FACTUAL BACKGROUND

Plaintiff Alexis Berg filed suit alleging that she was sexually assaulted on or about October 26, 2018, at a social gathering in Charleston County, South Carolina, with Defendant Patrick Bryant and others implicated in the incident. Central to Plaintiff's claims is an alleged video of the assault, which has been referred to publicly as the "rape tape." Plaintiff has admitted in discovery that she has never seen the alleged video and *does not possess it*, though she has acknowledged possession of certain screenshots. Plaintiff was unconscious

2

during both the alleged assault and its filming and thus would have no contemporaneous knowledge of either. Notably, it is Bryant and Bryant alone who possess this video, and he should be required to provide it to the Court for in-camera review. The video is corroborated by a witness, by security camera screenshots, by a contemporaneous diary entry and Congresswoman Mace's account of viewing the video on Bryant's phone after he gave her access to his device.

Third-Party Defendant Congresswoman Mace, discovered this video and other materials on Bryant's cell phone on or about November 5, 2023 when Bryant granted her express permission to access his phone during a meeting arranged by Congresswoman Mace with two of her pastors. Congresswoman Mace recorded the pastoral meeting in its entirety. In his own words, and in front of men of God, Bryant granted Congresswoman Mace permission to access his phone. When asked repeatedly if she had permission and could access his phone during the pastoral meeting, Bryant stated, "Sure. Absolutely!" In the church parking lot, immediately following the pastoral meeting, Bryant added Congresswoman Mace's thumbprint to his phone, so she could access it at any time.

That night, Congresswoman Mace discovered images depicting potential criminal misconduct. Within hours of this discovery, Congresswoman Mace contacted law enforcement. She subsequently participated in a formal, in-person interview with the Capitol Police, the U.S. Attorney ("U.S.A."), the Federal Bureau of Investigation ("FBI"), and the South Carolina Law Enforcement Division ("SLED") in December 2023.

The timing of Congresswoman Mace's formal in-person interview to law enforcement on December 13-15, 2023, was affected by extraordinary circumstances beyond her control including: (a) physical recovery from Bryant's physical assault, which left visible injuries, including a permanent scar; (b) acute Post-Traumatic Stress Disorder triggered by the disturbing images and videos she discovered on Bryant's phone; (c) intensive therapy and

3

ELECTRONICALLY FILED - 2026 Jan 15 3:56 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

mental health counseling necessitated by viewing recordings depicting sexual assault and voyeurism; (d) profound mental anguish upon discovering what appeared to be child sexual abuse material; (e) the trauma identifying multiple victims recorded on Bryant's device, several of whom she knew personally; (f) her legislative schedule, which required her presence in Washington, D.C. for congressional votes and official duties; (g) the urgent need to secure housing for herself and her minor children after Bryant refused to permit her to remain in their jointly-owned home, leaving her and her minor children effectively homeless; and, (h) surgery for a tumor and the subsequent recovery period. Notwithstanding these extraordinary circumstances, Congresswoman Mace took immediate steps to understand the reporting process, privately consulting with local law enforcement, SLED, the U.S.A., the FBI and the Office of General Counsel for the U.S. House of Representatives, the Capitol Police, and legal counsel in the hours and days following her discovery to determine what federal and state laws may have been violated and to understand the appropriate reporting procedures for each jurisdiction.

On February 10, 2025, SLED spokesperson Rene Wunderlich publicly confirmed: "SLED has conducted multiple interviews, served multiple search warrants, and has a well-documented case file." The SLED investigation remains ongoing as of the date of this filing.

Since February 2025, and to her personal and professional detriment, Congresswoman Mace has courageously spoken about the materials she uncovered on Bryant's phone out of grave concern for her constituents. She has advocated for victims of sexual assault and introduced legislation aimed at protecting women and children. Congresswoman Mace is deeply alarmed about possible communicable diseases and the inability of DHEC to notify potential victims; She is gravely concerned about constituents who could be filmed without their knowledge or consent; she is troubled by the idea that tourist renting a short term rental known to record women without their knowledge or consent could also be filmed; she's

ELECTRONICALLY FILED - 2026 Jan 15 3:56 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

profoundly alarmed about minor children being recorded by Bryant and one of his business partners due to the images she personally discovered and witnesses and potential victims who have since come forward since her brave House Speech on February 10, 2025.

In direct response to what Congresswoman Mace experienced personally and also discovered, she has drafted more than a dozen pieces of federal legislation aimed at protecting women and children from sexual exploitation demonstrating the connection between this matter and her legislative duties. Congresswoman Mace views her service in Congress not as a political position but as a sacred duty to protect her constituents. When she discovered evidence of crimes against women and possibly children on Bryant's devices, she understood that her obligation extended beyond herself, to the other victims, to potential future victims, and to the women and children of South Carolina she is sworn to serve. Two weeks ago, through her federal office, and because of her public advocacy, Congresswoman Mace identified two more potential victims, one of whom identified the location of a second potential hidden camera.

In direct response to what Congresswoman Mace discovered, she has introduced the following federal legislation, which includes, but is not limited to: The Sue VOYEURS Act which creates a civil right of action for victims of voyeurism; the Stop VOYEURS Act which expands the very narrow criminal prohibition against video voyeurism at the federal level; H.R. 7567 which addresses deep fakes; the Violence Against Women by Illegal Aliens Act which would deport sex offenders, pedophiles and murderers here illegally; the Safe Shelters Act which prohibits sex offenders from entering or using the services of emergency shelters; the Rape Shield Enhancement Act to protect the privacy of rape victims; the Stop the Invasion of Women's Spaces Act which defunds any entity who allows an individual to use a single-sex facility that does not correspond to their biological sex; the Protecting Women's Private Spaces Act which prohibits people from using single-sex facilities on federal property

ELECTRONICALLY FILED - 2026 Jan 16 3:56 PM - CHARLESTON - COMMON PLEAS - CASE#2026CP1003124

other than those corresponding to their biological sex; the Prison Rape Prevention Act which requires inmates to be housed based on their biological sex; the VANISH Act which addresses revenge porn; H.R. 8180 which increases the civil penalty for revenge porn in Violence Against Women Act from $150k to $500k; and, H.Res. 1579 which prohibits Members, officers, and employees of the U.S. House from using single-sex facilities other than those corresponding to their biological sex. This legislative record demonstrates that Congresswoman Mace's statements about the underlying events are inseparable from her official duties as a federal legislator.

Bryant filed a Third-Party Complaint against Mace, and Melissa Britton, on or about November 6, 2025, and an Amended Third-Party Complaint against the same on or about December 9, 2025, alleging claims including defamation, intentional infliction of emotional distress, conversion, invasion of privacy, civil conspiracy, and aiding and abetting criminal conduct. He asserts that Congresswoman Mace unlawfully accessed his phone, extracted private data, and has threatened to release materials publicly. Congresswoman Mace vehemently denies these allegations. Her phone access was authorized by Bryant personally and her subsequent actions were motivated by legitimate concerns about potential criminal conduct.

On November 26, 2025, the Court issued a *sua sponte* Gag Order prohibiting all parties, their agents, representatives, and attorneys from making or publishing any comment about any aspect of the case, commenting about any party or attorney, or publishing or sharing any materials related to the case. The Gag Order was initially limited to three weeks but, on December 18, 2025, was extended by the Court until it rules on Bryant's Motion for TRO/Injunction. Bryant filed his Motion for Temporary Restraining Order, approximately two years after Congresswoman Mace viewed images on his phone and reported its contents to law enforcement authorities.

6

ELECTRONICALLY FILED - 2026 Jan 16 3:56 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

## SUMMARY OF ARGUMENT

The Court should vacate or substantially modify the Gag Order and deny Bryant's Motion for Temporary Restraining Order for the following reasons:

**First**, as currently drafted, the Gag Order constitutes an unconstitutional prior restraint on speech that violates the First Amendment. The Order was issued without the specific factual findings required by South Carolina law, is overly broad and not narrowly tailored to serve any legitimate government interest, fails to leave open alternative avenues of communication, and was issued without proper procedural safeguards. These constitutional deficiencies are particularly problematic for Congresswoman Mace, who, as an elected official, has a duty and responsibility to communicate with her constituents about matters of public concern.

**Second**, as currently drafted, the Gag Order violates the Speech or Debate Clause of the U.S. Constitution because it prevents Congresswoman Mace from performing core legislative functions. Congresswoman Mace has drafted and introduced more than a dozen bills in direct response to the underlying events of this case. Discussion, explanation, and advocacy for the necessity and adoption of this legislation are protected legislative act. The Speech or Debate Clause protects communications that are integral to the legislative process, including discussions about how personal experiences inform legislative acts. A state court cannot gag a federal legislator on matters directly connected to pending federal legislation. Additionally, the Westfall Act may provide immunity for actions taken within the scope of her official duties.

**Third**, Bryant's Motion for Temporary Restraining Order should be denied because he has failed to establish the requirements for such extraordinary relief under South Carolina law. Bryant has not demonstrated immediate, irreparable harm, his two-year delay in seeking relief undermines any claim of urgency. He is unlikely to succeed on the merits given the fact

7

that Bryant gave Congresswoman Mace express permission to access his phone, wherein she recorded the conversation giving her permission. Bryant has adequate remedies at law through his existing claims for monetary damages. Moreover, the requested TRO would constitute an impermissible prior restraint on speech protected by the First Amendment.

**Fourth,** Bryant's Motion is barred by the doctrine of laches. His unreasonable two-year delay in seeking injunctive relief, during which Congresswoman Mace has built her political campaign and public persona around advocacy for victims of sexual assault, has materially prejudiced her. Equity should refuse to enforce Bryant's rights through the extraordinary remedy of a temporary restraining order under these circumstances.

**Fifth,** Bryant's Motion is barred by the doctrine of unclean hands. A court in this circuit has already sanctioned Bryant for litigation abuse in a related proceeding targeting Congresswoman Mace. A party who has been found to have abused the judicial process should not be allowed to seek equity's aid.

**Finally,** Bryant's Renewed Motion for In Camera Review should also be denied. The materials Bryant seeks are in law enforcement's custody after Congresswoman Mace turned them over to SLED in December 2023. Furthermore, Bryant possesses the very materials he asks this Court to protect in an in-camera review. Bryant needs no judicial intervention to secure what is already in his possession. Bryant is not seeking to recover something he lost, he is seeking to silence his accusers and victims. Bryant has not demonstrated entitlement to extraordinary judicial review of materials held by a third party, and adequate discovery mechanisms exist through which he may pursue these materials through proper channels.

## ARGUMENT

**I.     THE GAG ORDER VIOLATES THE FIRST AMENDMENT AS AN UNCONSTITUTIONAL PRIOR RESTRAINT ON SPEECH**

**A.     Legal Framework for Analyzing Prior Restraints on Speech**

ELECTRONICALLY FILED - 2026 Jan 16 3:56 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

ELECTRONICALLY FILED - 2026 Jan 15 3:56 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

The First Amendment to the United States Constitution and Article I, Section 2 of the South Carolina Constitution prohibit laws that abridge the freedom of speech. S.C. Const. Ann. Art. I, § 2; U.S. Const. amend. I. While the right to freedom of speech is not absolute, any restriction on this fundamental right must satisfy strict constitutional requirements.

Courts have recognized that prior restraints on speech—restrictions imposed before speech occurs are particularly disfavored under the First Amendment. *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Prior restraints bear "a heavy presumption against [their] constitutional validity." *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971). The Gag Order at issue directly enjoins the parties, including Congresswoman Mace, from speaking on matters of public concern, and matters of public concern for her constituents and her legislation, and therefore constitutes a prior restraint on speech.

South Carolina courts apply a four-prong test to evaluate government regulations challenged under the First Amendment. A regulation will be valid only if it: (1) is within the constitutional power of the government; (2) furthers an important or substantial government interest; (3) the governmental interest is unrelated to the suppression of free expression; and (4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. *City of Beaufort v. Baker*, 315 S.C.146, 432 S.E.2d 470 (1993). *U.S. v. O'brien*, 396 U.S. 367 (1968).

**B.     The Gag Order Lacks the Specific Factual Findings Required by South Carolina Law**

South Carolina courts have consistently required that any decision to restrict public access to court proceedings or to limit the speech of parties must be supported by specific factual findings. The South Carolina Supreme Court has "strictly applied this constitutional requirement that courts be open to the public and the press" and has held that "the decision of a judge to close any proceeding must be supported by findings which explain the balancing of

ELECTRONICALLY FILED - 2026 Jan 16 3:56 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

interests and the need for closure of the proceeding." *Ex parte Island Packet*, 308 S.C. 198, 417 S.E.2d 575 (1992).

In *Ex parte Columbia Newspapers, Inc.*, the court vacated an order closing a transfer hearing because the family court judge "erred in failing to make specific findings that closure was necessary to protect the rights of the juveniles charged with murder." 286 S.C. 116, 333 S.E.2d 337 (1985). The court held that a "conclusory statement that opening the proceedings to the public would have an adverse effect upon the chances of rehabilitation of the juveniles is not a sufficient finding." *Id.*

Here, the Court issued the Gag Order without a motion from any party and without making specific factual findings beyond a general statement about ensuring fair proceedings. This conclusory statement is insufficient to justify such a broad restriction on speech. The Court failed to explain why less restrictive alternatives would not adequately protect the integrity of the judicial process or to balance the competing interests at stake. The procedural posture of this case compounds the constitutional deficiency. On December 18, 2025, the Court extended the Gag Order indefinitely "until there is a ruling on Bryant's Motion for TRO/Injunction." This creates an untenable situation: Congresswoman Mace is silenced pending resolution of the very motion she is opposing. She cannot publicly advocate against the restrictions on her speech while those restrictions remain in force. This procedural arrangement effectively prejudges the merits by imposing the requested relief before the motion is decided, placing the constitutional burden on the wrong party. It is Bryant who should bear the heavy burden of justifying a prior restraint, not Congresswoman Mace who must argue for her First Amendment rights while gagged.

### C.    The Gag Order Is Overbroad and Not Narrowly Tailored

The Gag Order prohibits all parties, their agents, representatives, and attorneys from "making or publishing any comment about any aspect of this case" via any form of

ELECTRONICALLY FILED - 2026 Jan 16 3:56 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

communication. This sweeping prohibition is not narrowly tailored to serve any legitimate government interest.

Under South Carolina law, a regulation that "sweeps broadly without any interest-related purpose for that sweep" burdens substantially more speech than necessary to accomplish its purpose. *Video Gaming Consultants, Inc., v. South Carolina Dept. of Rev.*, 342 S.C. 34, 535 S.E.2d 642 (2000). The Gag Order here prohibits all speech about "any aspect" of the case, rather than focusing on specific categories of harmful disclosures that might actually threaten the fairness of the proceedings.

When evaluating restrictions on access to information, courts consider numerous factors including: the public interest in the proceeding; the private or public status of the litigants; whether release would enhance the public's understanding of an important event; and whether a particular decision will sustain or offend the fundamental interests of public access. *Ex parte The Greenville News*, 326 S.C. 1, 482 S.E.2d 556 (1997). The Gag Order as written fails to consider these factors. The public has a significant interest in this case, particularly given that it involves a sitting U.S. Congresswoman, a candidate for Governor, and the protection of the public from criminal conduct.

### D.     The Gag Order Fails to Leave Open Alternative Avenues of Communication

Content-neutral restrictions on speech must "allow for adequate alternative avenues of communication." *Greenville Bistro, LLC v. Greenville* Cnty, 435 S.C. 146, 866 S.E.2d 562 (2021). The Gag Order prohibits "making or publishing any comment about any aspect of this case" via any form of communication. This absolute prohibition leaves no alternative avenues for Congresswoman Mace to communicate to her constituents about how the events of this case informed her Congressional priorities, legislation and advocacy to protect her constituents from further potential criminal acts.

11

This is particularly problematic given Congresswoman Mace's position as a public official and candidate for Governor. The First Amendment recognizes that debate on public issues and about policymakers "should be uninhibited, robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964); *Cruce v. Berkeley Cnty. Sch. Dist.*, 442 S.C. 1, 22, 896 S.E.2d 50, 61 (2024). The Gag Order prevents Congresswoman Mace from communicating with her constituents or others about a matter of public concern, which strikes at the heart of the First Amendment's protection of political speech.

Congresswoman Mace is currently a candidate for Governor of South Carolina in an election which is only a matter of months away. The Gag Order not only deprives Congresswoman Mace's constituents, but it deprives South Carolina voters of information directly relevant to their electoral decision-making. The First Amendment protections are at their zenith when political speech and electoral accountability are at stake.

### E.    Constituent Communications are Protected by the First Amendment

The breadth of the Gag Order, as written, creates First Amendment issues for Congresswoman Mace communicating with her constituents. Congresswoman Mace's Public statements are not collateral to her legislative duties, they are part of her legislative responsibilities. The Constitution vests Congress with both lawmaking and informing functions. When Congresswoman Mace explains to the public why she has introduced legislation protecting victims of sexual exploitation, she is performing a core congressional role. The materials she discovered are not merely evidence in a civil lawsuit or criminal investigation, they are the factual predicate for pending federal legislation. Silencing her about those materials silences her about her own legislation and violates her First Amendment Righs.

## II.    THE GAG ORDER, AS WRITTEN, VIOLATES THE SPEECH OR DEBATE CLAUSE OF THE U.S. CONSTITUTION

12

ELECTRONICALLY FILED - 2026 Jan 15 3:56 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

ELECTRONICALLY FILED - 2026 Jan 15 3:56 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

## A.    The Speech or Debate Clause Protects Legislative Acts

The Speech or Debate Clause of the U.S. Constitution provides that members of Congress "for any Speech or Debate in either House, . . . shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1.

The heart of the Speech or Debate Clause is speech or debate in either House of Congress. *Gravel v. United States*, 408 U.S. 606, 625 (1972). However, courts have consistently extended the scope of the protection afforded to include matters that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Id.* at 625; *see also Lockaby v. City of Simpsonville*, 440 S.C. 156, 168, 889 S.E.2d 826, 833 (Ct. App. 2023) (discussing the scope of legislative immunity).

## B.    The Gag Order Impermissibly Restricts Congresswoman Mace's Protected Legislative Acts

The Gag Order broadly prohibits "making or publishing any comment about any aspect of this case" without any exception for constitutionally protected legislative activities, such as speech on the House Floor and at Committee hearings. Such speech is absolutely protected by the Clause. The Gag Order's sweeping prohibition on such speech directly impairs Congresswoman Mace's ability to discuss legislation she has drafted, introduced and advocated for in response to discovering the potential criminal conduct and witnessing firsthand the lack of rights and protections afforded to victims of such conduct.

The direct connection between facts in the underlying litigation and Congresswoman Mace's legislative agenda brings statements related to the litigation within the sphere of protected legislative activity. When Congresswoman Mace discusses how her experience in

ELECTRONICALLY FILED - 2026 Jan 15 3:56 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

this matter informed her legislative initiatives, she is engaging in communication that is integral to the deliberative and communicative process of legislating. Preventing her from making these connections impairs her ability to explain the purpose and advocate for the necessity of her proposed legislation to her congressional colleagues, but also to her constituents, and the public.

Additionally, as a member of the House Oversight Committee, Congresswoman Mace has oversight responsibilities that may intersect with the matters at issue in this case. Congressional oversight functions are also protected legislative acts. The Court should not assume that a state court gag order can restrict a Member of Congress's ability to perform constitutionally assigned duties.

Congresswoman Mace has drafted more than a dozen pieces of legislation in direct response to what she discovered, including, but not limited to the STOP Voyeurs Act and the SUE Voyeurs Act. These are not abstract policy proposals, they are concrete legislative responses to specific conduct she discovered. Her ability to advocate for these bills requires explaining the underlying acts and information that prompted them.

## C.  The Westfall Act May Provide Additional Protection

The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, provides federal employees with immunity from common law tort claims brought against them in their personal capacity for acts performed within the scope of their employment. 28 U.S.C. § 2679. Several of Congresswoman Mace's actions could potentially be considered within the scope of her employment as a Congresswoman, including investigating potential criminal conduct related to her legislative work on protecting victims and turning over evidence to law enforcement as a public official's duty to report potential criminal activity. *See Stewart v. State Crop Pest Comm'n*, 307 S.C. 133, 137, 414 S.E.2d 137, 139 (1992) (discussing the Westfall Act's protections).

ELECTRONICALLY FILED - 2026 Jan 16 3:56 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

### III.   BRYANT'S MOTION FOR TEMPORARY RESTRAINING ORDER SHOULD BE DENIED

#### A.   Legal Standard for Temporary Restraining Orders in South Carolina

Under South Carolina law, a temporary restraining order is "a drastic remedy issued by the court in its discretion to prevent irreparable harm suffered by the plaintiff." *Scratch Golf Co. v. Dunes W. Residential Golf Props.*, 361 S.C. 117, 121, 603 S.E.2d 905, 907 (2004). A preliminary injunction should issue only if necessary to preserve the status quo ante, and only upon a showing by the moving party that: (1) without such relief it will suffer irreparable harm; (2) it has a likelihood of success on the merits; and (3) there is no adequate remedy at law. *Poynter Invs. v. Century Builders of Piedmont*, 387 S.C. 583, 586, 694 S.E.2d 15, 17 (2010); *Hook Point, LLC v. Branch Banking & Tr. Co.*, 397 S.C. 507, 512, 725 S.E.2d 681, 684 (2012).

Additionally, the balancing of equities is subsumed within the irreparable harm and inadequate remedy at law components of this test. *Poynter Invs.*, 387 S.C. at 586, 694 S.E.2d at 17. A preliminary injunction "rests within the sound discretion of the trial judge and will not be overturned unless the order is clearly erroneous." *Jennings-Dill, Inc. v. Israel*, 442 S.C. 98, 105, 897 S.E.2d 201, 204 (Ct. App. 2024). As demonstrated below, Bryant fails to establish any of the required elements.

Finally, Bryant seeks a restraining order against Congresswoman Mace while the record will reflect numerous documented instances of his harassment and stalking of her. The equities do not favor granting emergency protection to the party who has engaged in a pattern of harassment and conduct towards the very person he claims to fear.

#### B.   Bryant Cannot Demonstrate Immediate, Irreparable Harm

Bryant's motion for a temporary restraining order comes approximately two years after Mace discovered the subject photos and video on Bryant's phone in November 2023.

15

ELECTRONICALLY FILED - 2026 Jan 15 3:56 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

This substantial delay directly contradicts any claim of immediate, irreparable harm. Pursuant to Rule 65(b), a temporary restraining order may be issued without notice only where "it clearly appears from specific facts shown by affidavit or by verified complaint that immediate or irreparable injury, loss or damage will result to the applicant before notice can be served and a hearing had thereon." Rule 65(b), SCRCP.

Bryant's claim of irreparable harm is further undermined by the discovery record in this case. Plaintiff Alexis Berg, the alleged victim whose interests Bryant now purports to protect, has admitted in her discovery responses that she has never seen the alleged video, does not possess it, and has only a single screenshot in her possession. (See Plaintiff's Responses to Defendant's First Set of Interrogatories and Requests for Production, dated November 16, 2025.) If the plaintiff herself cannot identify or produce the materials Bryant seeks to restrain, his assertion that their imminent release will cause him irreparable harm is speculative at best.

Moreover, Bryant seeks emergency relief to prevent the release of materials that have already been the subject of extensive public discussion for nearly a year. Congresswoman Mace has spoken publicly about these materials since February 2025, and screenshots from the alleged assault were published with Plaintiff Berg's express consent. Bryant cannot now claim urgency to prevent disclosure of information that has been in the public sphere for months.

Bryant's claim of irreparable harm is further undermined by his own conduct. A party who has initiated numerous documented incidents of harassment and stalking cannot credibly claim he will suffer immediate, irreparable injury absent judicial intervention. Some of Bryant's harm toward Mace include multiple incidents of physical assault which she has documented. His actions demonstrate that he does not genuinely fear Congresswoman Mace, instead, he seeks to silence her.

16

ELECTRONICALLY FILED - 2026 Jan 15 3:56 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

Bryant's claims of reputational harm are precisely the type of injuries that can be adequately compensated through monetary damages in his already-filed claims for defamation, intentional infliction of emotional distress, and invasion of privacy. Furthermore, one of the primary limitations placed on the right of privacy is that it does not prohibit the publication of matter which is of legitimate public or general interest. *Burton v. York Cty. Sheriff's Dep't*, 358 S.C. 339, 346, 594 S.E.2d 888, 892 (Ct. App. 2004); *Meetze v. Associated Press*, 230 S.C. 330, 335, 95 S.E.2d 606, 609 (1956).

### C.    Bryant Has Not Demonstrated a Likelihood of Success on the Merits

Bryant has not demonstrated a likelihood of success on his conversion claim, as he provides no evidence that Mace "hacked" his phone. Without such evidence, Bryant cannot establish the wrongful taking element necessary for conversion. Moreover, if the materials contain evidence of criminal activity, as Mace claims, she had a legal right to turn them over to law enforcement, which she did in December 2023.

Additionally, as a sitting U.S. Congresswoman and candidate for governor, Mace has a constitutional right to speak on matters of public concern, particularly those involving potential criminal conduct. The First Amendment recognizes that issues of public policy and core government functions, such as law and order, are "so essential to democracy that public debate about them and their policymakers should be unchecked," except where the speech is knowingly false or uttered with reckless disregard of its truth or falsity. *Cruce*, 442 S.C. at 22, 896 S.E.2d at 61.

### D.    Bryant Has an Adequate Remedy at Law

Bryant has already filed claims for defamation, intentional infliction of emotional distress, conversion, invasion of privacy, and civil conspiracy against Mace. These claims, if successful, would provide monetary compensation for any proven harm. The existence of

these alternative remedies demonstrates that Bryant has an adequate remedy at law, which precludes the issuance of a temporary restraining order.

### E.     The Balance of Equities and Public Interest Favor Mace

The balance of equities in this case strongly favors Mace. As a sitting U.S. Congresswoman and candidate for governor, Mace has a constitutional right to speak on matters of public concern, especially those involving potential criminal conduct. Restricting her speech would infringe upon her constitutional rights and potentially deprive the public of information relevant to their voting decisions.

The public has a strong interest in being informed about potential criminal conduct, particularly when it involves allegations of sexual assault. "At some point, the public interest in obtaining information becomes dominant over the individual's desire for privacy." *Meetze*, 230 S.C. at 335, 95 S.E.2d at 609. Bryant's involvement in a lawsuit alleging sexual assault places him within the category of persons who have become actors in events of public interest. *Burton*, 358 S.C. at 346, 594 S.E.2d at 892.

Moreover, Bryant comes before this court seeking extraordinary equitable relief while his own litigation conduct has already been sanctioned by another court in the circuit. On October 30, 2025, Judge Rode issued a final sanctions Order in *GLT2, LLC v. Jane Doe*, Case No.: 2025-CP-10-00981, Finding that Bryant, through a fictitious company that he created 10 days after Congresswoman Mace's February 10, 2025, floor speech, engaged in unauthorized discovery tactics that violated rules 11 and 27, SCRCP. The court found Bryant's counsel conducted 'secret discovery' designed to be 'undetectable' and ordered sanctions totaling over $48,000.00. A party who has been sanctioned for abusing court processes should not be rewarded with the extraordinary remedy of a temporary restraining order

## IV.     BRYANT'S MOTION IS BARRED BY LACHES DUE TO HIS UNREASONABLE DELAY IN SEEKING RELIEF

ELECTRONICALLY FILED - 2026 Jan 16 3:56 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

ELECTRONICALLY FILED - 2026 Jan 15 3:56 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

### A.     The Doctrine of Laches Under South Carolina Law

Under South Carolina law, laches is an equitable doctrine defined as "neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done." *Robinson v. Estate of Harris*, 388 S.C. 645, 653, 698 S.E.2d 229, 233 (2010). The doctrine operates as a defense when "a party, knowing his rights, does not seasonably assert them, but by unreasonable delay causes his adversary to incur expenses or enter into obligations or otherwise detrimentally change his position." *King v. James*, 388 S.C. 16, 22, 694 S.E.2d 35, 38 (Ct. App. 2010).

To establish laches, a party must demonstrate three elements: (1) a delay, (2) that was unreasonable under the circumstances, and (3) prejudice. *Strickland v. Strickland,* 375 S.C. 76, 85, 650 S.E.2d 465, 470 (2007). The court is vested with wide discretion in determining what constitutes an unreasonable delay. *Chambers of S.C., Inc. v. Cty. Council*, 315 S.C. 418, 422, 434 S.E.2d 279, 281 (1993).

### B.     Bryant's Two-Year Delay in Seeking Injunctive Relief

The first element of laches, delay, is clearly established. Bryant admits that Congresswoman Mace obtained the materials from his phone in November 2023, yet he did not file his Motion for Temporary Restraining Order until November 2025, a delay of approximately two years. This substantial period of inaction satisfies the first prong of the laches analysis.

Equity aids the vigilant, not those who sleep on their rights. Bryant watched silently for two years as congresswoman Mace spoke about her trauma, built her public advocacy, and her legislative agenda around these issues. Having allowed her to rely on his inaction, he cannot now claim entitlement to emergency relief. Bryant can't sleep on his rights for two years and then all of a sudden claim urgency.

### C.     Bryant's Delay Was Unreasonable Under the Circumstances

19

Bryant knew that Congresswoman Mace possessed the materials from his phone as early as November 2023. He was aware that she turned these materials over to the U.S.A., the FBI, the Capitol Police, and SLED in December 2023. Most significantly, throughout this two-year period, Mace has been publicly discussing the content of these materials as part of her advocacy for victims. Despite these clear and ongoing actions, Bryant inexplicably waited two years before seeking emergency injunctive relief.

South Carolina courts have emphasized that "in order to charge a party with laches in the assertion of an alleged right, the party charged must have had knowledge of the facts upon which the claim is based." *Timms v. Timms*, 290 S.C. 133, 137, 348 S.E.2d 386, 388 (Ct. App. 1986). Bryant indisputably had knowledge of all relevant facts—Mace's possession of the materials, her disclosure to law enforcement, and her public statements about their content—yet he failed to act with reasonable diligence.

**D.    Congresswoman Mace Has Been Materially Prejudiced by Bryant's Delay**

The third element requires prejudice to the party asserting the defense. Prejudice may occur when a party has "incurred expenses or entered into obligations or otherwise detrimentally changed his position." *Mack v. Edens*, 306 S.C. 433, 436, 412 S.E.2d 431, 432 (Ct. App. 1991).

Congresswoman Mace has suffered precisely this type of material prejudice. During the two years that Bryant remained silent, Mace has built her political campaign and public persona around her advocacy for victims of sexual assault, including her public statements about the materials she allegedly discovered on Bryant's phone. She has made these issues central to her campaign for governor and her legislative work as a Congresswoman. Granting a TRO at this late stage would unfairly silence Congresswoman Mace on matters that have become fundamental to her public service and political identity.

ELECTRONICALLY FILED - 2026 Jan 16 3:56 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

ELECTRONICALLY FILED - 2026 Jan 15 3:56 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

## V. BRYANT'S MOTION IS BARRED BY THE DOCTRINE OF UNCLEAN HANDS

A party seeking equitable relief must come to the court with clean hands. "He who comes into equity must come with clean hands, and he who has done inequity shall not have equity." *Jefferson Standard Life Ins. Co. v. Hydrick*, 143 S.C. 127, 141 S.E. 278 (1928). The unclean hands doctrine bars relief when the party seeking equity has engaged in inequitable conduct related to the subject matter of the litigation.

Bryant's hands are far from clean. On October 30, 2025, Judge Rode issued a final sanctions Order in *GLT2, LLC v. Jane Doe*, Case No.: 2025-CP-10-00981, finding that Bryant, through a fictitious company that he created 10 days after Congresswoman Mace's February 10, 2025, floor speech, engaged in unauthorized discovery tactics that violated rules 11 and 27, SCRCP. The court found Bryant's counsel conducted 'secret discovery' designed to be 'undetectable' and ordered sanctions totaling over $48,000.00.

Bryant now asks this court for the extraordinary equitable remedy of a temporary restraining order, against the same person he was secretly investigating through improper means. A party who has been sanctioned for abusing judicial processes and related litigation cannot claim entitlement to equity's aid. The doctrine of unclean hands bars his request.

Bryant's inequitable conduct extends beyond litigation abuse. Congresswoman Mace has documented numerous instances of harassment and stalking by Bryant. He cannot credibly seek the court's protection while engaging in the very conduct he purports to fear from others.

## VI. BRYANT'S RENEWED MOTION FOR *IN CAMERA* REVIEW SHOULD BE DENIED

Bryant renews his Motion for In Camera Review of the alleged assault video, arguing that the Court should compel its production and review because Plaintiff Berg admits she has never seen it and does not possess it. This motion should be denied for several reasons.

ELECTRONICALLY FILED - 2026 Jan 15 3:56 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

### A. The Materials Are in Law Enforcement Custody

Congresswoman Mace turned over the materials she discovered to the South Carolina Law Enforcement Division (SLED) in December 2023. These materials are now part of an ongoing or potential law enforcement investigation. Congresswoman Mace does not have unfettered authority to produce materials that are in SLED's custody, nor would it be appropriate for her to do so while a potential criminal investigation remains pending. Bryant's proper avenue for obtaining these materials, if they exist, is through appropriate legal process directed at SLED—not through this Court's compulsion of a third-party defendant.

### B. The Existence and Content of the Video Remain Disputed

Bryant's motion assumes the existence of a video depicting what he characterizes as his "private sexual activities" with women other than Plaintiff Berg. Congresswoman Mace contends the materials depict evidence of criminal conduct. This fundamental factual dispute cannot be resolved through an in-camera review at this stage of the litigation. The proper mechanism for resolving such disputes is through discovery, with appropriate protective orders if warranted, not through extraordinary judicial intervention.

### C. Bryant Has Not Demonstrated Entitlement to This Relief

Bryant offers no legal authority establishing his entitlement to in camera judicial review of materials held by a third party and potentially in law enforcement custody. His motion is premised on the assumption that he has a right to control materials allegedly taken from his phone—the very issue in dispute in this litigation. The Court should not grant extraordinary relief based on Bryant's unproven allegations that Congresswoman Mace unlawfully obtained these materials.

### D. Adequate Discovery Mechanisms Exist

The South Carolina Rules of Civil Procedure provide adequate mechanisms for obtaining relevant evidence through discovery. Bryant may serve discovery requests,

ELECTRONICALLY FILED - 2026 Jan 15 3:56 PM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

subpoena SLED for materials in its possession, or seek appropriate court intervention if discovery disputes arise. In camera review is not a substitute for the ordinary discovery process, particularly where, as here, the materials at issue are the subject of contested claims and may be in the custody of law enforcement.

## CONCLUSION

For the foregoing reasons, Third-Party Defendant Nancy Ruth Mace respectfully requests that this Court:

1. Deny Defendant Patrick Bryant's Motion for Temporary Restraining Order in its entirety;

2. Deny Defendant Patrick Bryant's Renewed Motion for In Camera Review;

3. Vacate the Court's *sua sponte* Gag Order or, in the alternative, modify it to narrowly tailor any speech restrictions consistent with the First Amendment and the Speech or Debate Clause, including explicit exemptions for Ms. Mace's legislative and political communications; and,

4. Grant such other and further relief as the Court deems just and proper.


THE LAW OFFICE OF D. CRAIG BROWN, LLC

By:     s/D. Craig Brown
        D. Craig Brown, Esq.
        265 W. Evans St.
        Florence, SC 29501
        (843) 676-0169
        craigbrown@craigbrownlawfirm.com


Attorney for Third-Party Defendant Nancy Ruth Mace

December 29, 2025
Florence, SC

23

ELECTRONICALLY FILED - 2026 Jan 21 11:01 AM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF CHARLESTON<br><br>Alexis Berg,<br><br>      Plaintiff,<br><br>vs.<br><br>Patrick Bryant, John Osborne, Eric Bowman,<br>Pommer Group LLC, Assignment Desk Works<br>LLC and GLT2, LLC,<br><br>      Defendants. | IN THE COURT OF COMMON PLEAS<br>FOR THE NINTH JUDICIAL CIRCUIT<br>C/A NO.: 2025-CP-10-03124 |
| Patrick Bryant,<br><br>      Third Party Plaintiff,<br><br>vs.<br><br>Nancy Ruth Mace, and Melissa Britton,<br><br>      Third Party Defendants. | **AFFIDAVIT OF PATRICK BRYANT** |

I, PATRICK BRYANT, hereby declare under penalty of perjury the following:

    1.    I am over the age of 18 and fully competent to testify as to the matters contained in this Affidavit.

    2.    I submit this Affidavit in support of Defendants (Eric Bowman and Patrick Bryant's) Order to Show Cause and Motion for Civil Contempt holding Third Party Defendant Nancy Ruth Mace in civil contempt for repeated violations of this Court's November 26, 2025 Gag Order.

ELECTRONICALLY FILED - 2026 Jan 21 11:01 AM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

3.    I was made aware of the Gag Order by my attorneys and have complied with your Honor's directives since entry and extension of the Gag Order.

4.    Due to Mace's continued pattern of posting inflammatory and defamatory comments on social media about me, Eric Bowman and John Osborne including calling us "rapists" "criminals" "predators" and "pedophiles," I was skeptical that Mace would comply with the Gag Order and therefore, I routinely checked her official Congressional X account, Instagram account, and Facebook profile.

5.    To no one's surprise, Mace violated the Gag Order the same day it was entered and several times since November 26, 2025.

6.    Since November 26, 2025, Mace has repeatedly made and amplified public statements about this case, about parties to this case, and about persons connected to this case, and has published related video and email content.

7.    I personally observed and preserved the following posts on Mace's various social media accounts, whether made by Mace or her representatives, as follows:

- On November 26, 2025, at 6:43 p.m. Mace, from her verified X account *@RepNancyMace*, publicly responded to a post reporting that "Eric Bowman has been granted bond on his domestic violence and harassment charges, 60k each" by stating: *"Not nearly enough. Very concerned for the safety of his victims. Keeping them in my prayers tonight."* The post names Eric Bowman, labels unnamed persons "his victims," and comments on alleged criminal conduct that is the subject of this matter. A true and authentic copy of Mace's X post is attached as **Exhibit 1.**

- On November 28, 2025, at approximately 11:00 a.m., from the same verified @RepNancyMace account, Mace posted: "IMPEACH ALL CORRUPT JUDGES" and, in the same thread: "Especially including those in South Carolina SPECIFICALLY." It may be reasonably inferred that Mace is criticizing the same judges she criticized only days earlier when naming Mr. Bowman. A true and authentic copy of Mace's X post is attached as **Exhibit 2.**

- On December 27, 2025 at 10:00 p.m., Mace posted a video on Instagram from @repnancymace in which she referred to Eric Bowman by his full name, called him

2

ELECTRONICALLY FILED - 2026 Jan 21 11:01 AM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

a "wife beater," and associated his name with "pedophiles," implying criminal conduct that has not been alleged in this litigation. A true and authentic screenshot of Mace's post and a transcript of the Instagram video are attached as **Exhibits 3 and 4**.

- On December 1, 2025, Mace's Congressional office sent a mass email newsletter titled "Rep. Nancy Mace says 2 more women accuse her ex-fiancé of abuse." The newsletter states, among other things, that: *"[t]wo additional women have come forward to report alleged abuse by Patrick Bryant, bringing renewed urgency to ongoing investigations and the need for potential victims to seek help. The allegations against Bryant include purported child sexual exploitation material, multiple rape accusations, and hidden cameras used to film women without their knowledge or consent. Patrick Bryant and his attorneys continue to harass his victims for doing what's right,"* followed by, *"I WILL NOT be silenced. I will fight for you;"* and urges anyone who believes they may have been victimized by Patrick Bryant or who has information relevant to "ongoing investigations" to contact Ms. Mace's federal office, which will provide contact information for law enforcement investigators, including SLED, connect victims with resources, and "protect" those who come forward. A true and authentic copy of this newsletter is attached as **Exhibit 5.**

- After the December 30 hearing in which the Court extended the Gag Order, Mace, from her verified @RepNancyMace account, again amplified the same video in which she refers to Eric Bowman as a "wife beater" and links him to "p\*dophiles" by publishing a new, pinned X post that states, "When your state Attorney General drops nearly every case and or charge against p\*dos, that's when you know your state is a p\*dophile paradise," while tweeting her December 27, 2025 video post. This post was published on December 31, 2025, at approximately 4:29 p.m. This new tweet, which is pinned at the top of her profile and has been viewed more than 20,000 times, republished and further disseminated the same video content. A true and authentic copy of this pinned post is attached as **Exhibit 6**.

- On January 16, 2026, Mace, from her @RepNancyMace X account, posted a picture of Eric Bowman's attorney, Robert Merting calling him a "pee-wee herman looking character" and threatening him for simply defending his client. In the same post, Mace named Eric Bowman and called him a "violent offender" while simultaneously referring to his "victims." A true and authentic copy of this post is attached as **Exhibit 7**.

8.    In addition to Mace's social media posts, Berg supplemented her discovery production and enclosed (1) her communications with Nancy Mace and (2) a "Victim" Impact Statement written by Nancy Mace (and presumably given to Berg). The letter speaks for itself.

ELECTRONICALLY FILED - 2026 Jan 21 11:01 AM - CHARLESTON - COMMON PLEAS - CASE#2025CP1003124

Mace states that she will not comply with the Gag Order and she will not listen to or follow directives set by Your Honor.  A true and authentic copy of this Mace's Letter is attached as **Exhibit 8.**

9.       Concerning the text messages produced, on November 15, 2025, Mace further defamed Bryant to Berg by calling him a "serial rapist."   A true and authentic copy of the text messages is attached as **Exhibit 9.**    Additionally, in those same text messages, Mace stated "I swear to god if they try to gag me I will willingly go to jail for using my first amendment."

10.      After entry of the Gag Order, on November 28, 2025, Mace sent Berg a text message confirming her refusal to comply with the Gag Order.  Mace stated "I believe the Supreme Court gave this case to a retired judge because if I'm governor, there are no consequences. Because he is retired. No need to get reelected by the people, no need to get reelected by the legislature, and no need to be appointed by the governor in the future. We may want to consider having the judge removed."  Mace further states to Berg that "[t]he judges up until this point have been ruling in favor of the victims this guy comes along with no incentive to be fair and is now ruling in favor of the predators and against the victims. The outcome is rigged."   Finally, Mace states "I am also I think going to demand Judge Hocker be removed from any case I am in and going to request judge rode." **Exhibit 10.**

FURTHER AFFIANT SAYETH NOT.

PATRICK BRYANT

SWORN to and Subscribed before me
this _20th_ day of January, 2026.
Signature _Courtney Crosby_
Name: _Courtney Crosby_
Notary Public for (County/State): _Charleston / SC_

4