IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Alex Berg,<br><br>Plaintiff,<br><br>v.<br><br>Patrick Bryant; John Osborne; Eric Bowman; Pommer Group, LLC; Assignment Desk Works, LLC; GLT2, LLC;<br><br>Defendants. | Civil Action No. 2:26-cv-305-BHH<br><br>**ORDER** |
| Patrick Bryant,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>Nancy Ruth Mace and Melissa Britton,<br><br>Third-Party Defendants. | |

This matter is before the Court on Defendant and Third-Party Plaintiff Patrick Bryant's ("Bryant") motion to remand this case to state court. (ECF No. 7.) In accordance with 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2), D.S.C., the matter was referred to a United States Magistrate Judge for preliminary review.

On June 17, 2026, United States Magistrate Judge Molly H. Cherry issued a Report and Recommendation ("Report"), outlining the issues and recommending that the Court grant Bryant's motion to remand and remand this case to state court. (ECF No. 22.) On June 30, 2026, Third-Party Defendant Nancy Ruth Mace ("Mace") filed objections to the

Magistrate Judge's Report, and she filed a motion for oral argument on July 1, 2026. (ECF Nos. 26, 27.) Due to a substitution of counsel for Bryant, the Court extended the time for Bryant to respond to Mace's objections and motion for oral argument, and a response was filed on August 31, 2026. (*See* ECF Nos. 24, 25, 31, 33, 35.)

Now, for the reasons set forth below, the Court affirms the Magistrate Judge's Report with modifications outlined herein, and the Court grants Bryant's motion to remand and remands this case to the Court of Common Pleas for the Ninth Judicial Circuit.

**STANDARD OF REVIEW**

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination only of those portions of the Report to which specific objections are made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

**ANALYSIS**

As the Magistrate Judge explained in her Report, this case has a complicated procedural history. On January 29, 2026, Mace, proceeding *pro se*, filed two notices of removal pursuant to 28 U.S.C. §§ 1442 and 1446, which were assigned two separate civil action numbers. According to the time stamps attached to the electronic filings, the first notice of removal, which is captioned as "Representative Nancy Ruth Mace's Notice of Removal," was filed at 10:56 a.m., and it sought to remove only the order to show cause and motion for civil contempt filed against her in the South Carolina Court of Common

Pleas for the Ninth Judicial Circuit by Defendants Patrick Bryant and Eric Bowman in the underlying state court action, case number 2025CP1003124. (*See* ECF No. 1 in Civil Action No. 2:26-306-BHH.) At 11:14 a.m., Mace filed the second notice of removal, which is captioned as "supplemental notice of removal removing entire case to federal court."[1] (ECF No. 1.) Additionally, on February 3, 2026, Mace filed an "amended notice of removal" pursuant to 28 U.S.C. §§ 1442 and 1446, removing "the matter initiated by the Third Party Complaint filed by Patrick Bryant against Rep. Mace in case number [sic] 2025CP1003124, including but not limited to the Order to Show Cause and Motion for Civil Contempt ("Motion") filed against her in the South Carolina Court of Common Pleas for the Ninth Judicial Circuit ("State Court") by Defendants Patrick Bryant and Eric Bowman." (ECF No. 3 at 1-2.)

As a bit of preliminary housekeeping, the Court notes that the parties have proceeded to litigate matters only within civil action number 2:26-305, and the Court finds it clear from Mace's filings that civil action number 2:26-306 is now moot, as it was effectively subsumed into this civil action. (*See* ECF Nos. 1, 3, 19, 26.) Thus, the Court will proceed with all matters within this civil action number and will ask the Clerk to terminate as moot civil action number 2:26-306.

Turning now to the pending motion to remand, which was filed on February 13,

---

[1] It now appears that Mace's "supplemental notice of removal" should have been filed within the same civil action number as her first notice of removal, but instead it was assigned a separate civil action number. To further complicate matters, the filing with the earlier time stamp should have generated the first civil action number (2:26-305), and the filing with the later time stamp should have generated the second civil action number (2:26-306), but for whatever reason the opposite occurred, so the earlier filed notice appears in the second civil action number (2:26-306), while the later filed notice–the "supplemental notice"–appears in the first civil action number (2:26-305). As explained above, however, the Court finds these docketing discrepancies to be of no moment, as the Court finds that civil action number 2:26-306 was effectively subsumed into this civil action.

2026, well within thirty days of all three of Mace's notices of removal, *see* 28 U.S.C. § 1447(c), Defendant and third-party Plaintiff Bryant asserts that Mace's removal–whether of the motion for order to show cause and motion for civil contempt or of the entire case–was untimely under 28 U.S.C. § 1446. (ECF No. 7.)

As noted previously, the Magistrate Judge entered a Report on June 17, 2026, agreeing with Bryant and recommending that the Court remand the entire case to state court. (ECF No. 22.) In the Report, the Magistrate Judge outlined the procedural background of the underlying state case as follows (and no party has specifically objected to this portion of the Report):

> Plaintiff Alexis Berg ("Berg") filed this case in Charleston County Court of Common Pleas on May 29, 2025, against Bryant, Eric Bowman ("Bowman"), John Osborne ("Osborne"), Pommer Group LLC, Assignment Desk Works LLC and GLT2, LLC, all of whom are South Carolina citizens. ECF No. 7-1, Amended Complaint ¶¶ 1-8. Berg alleges that she was the victim of a sexual assault that occurred on October 26, 2018, and which she did not discover until contacted by Mace. *Id.* ¶ *14.*
>
> On November 6, 2025, Bryant filed a Third-Party Complaint, naming Mace as a Third-Party Defendant and alleging that Mace "engaged in solely personal acts, for her personal gain, without any relationship to her position as a United States Congresswoman" when she committed acts amounting to (1) defamation, (2) intentional infliction of emotional distress, (3) conversion, (4) invasion of privacy, and (5) civil conspiracy by hacking and stealing Bryant's personal cellphone before concocting a scheme to falsely accuse Bryant of filming a fabricated sexual assault of Berg. ECF No. 3-1 at 12-30 ¶¶ 6–114. Bryant alleges that following her unauthorized access to Bryant's cellphone, Mace issued a letter to Bryant that included accusations of criminal voyeurism and warned of disastrous financial consequences. *Id.* ¶ 38. The Third-Party Complaint further alleges that Mace's behavior was intended to blackmail Bryant to pressure Bryant into transferring ownership of properties to Mace. Id. ¶¶ 38–40. Bryant's Third-Party Complaint was served on Mace on November 20, 2025. ECF No. 7-2.
>
> On November 17, 2025, Bryant filed his Motion for Temporary Restraining Order against Mace to stop her from repeatedly defaming him in public. ECF No. 7-3. The Motion for Temporary Restraining Order sought relief in the

form of an order that would, in part:

> enjoin Mace from using any personal social media platform, Congressional social media account, campaign account, press conference, interview, podcast, or communications with reporters to publish, post, or comment on: (1) Bryant; (2) Bryant's counsel; and (3) any claimed evidence related to this case including the alleged other women and their relationships with Bryant.

*Id.* at 4.

The state court judge did not issue an order regarding the Motion for Temporary Restraining Order. Rather, on November 26, 2025, the state court *sua sponte* entered a Gag Order on all Parties which prohibits:

> a. Making or publishing any comment about any aspect of this case (other than attorney client communications) via oral, written, social media, text or any other form of communication; b. Making or publishing any comment about any party or attorney to this case or anyone connected to this case (other than attorney client communications) via oral, written, social media, text or any other form of communication; and c. Publishing, transmitting, posting or sharing any documents, videos, photographs or any other materials related to any aspect of this case and or any party and or attorney and or any person connected to this case (other than attorney client communications).

ECF 3-1 at 2-5.

On December 12, 2025, Mace, represented by counsel, filed an Answer to Bryant's Third-Party Complaint in state court, asserting that her alleged actions were within the scope of her employment as a United States Congresswoman and protected under the following laws: (1) the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680, ("FTCA"); (2) the Westfall Act, 28 U.S.C. § 2679 ("Westfall"); and (3) the Speech or Debate Clause, U.S. Const. art. I, § 6, cl. 1. ECF 3-1 at 58–84, Mace Ans. to Third-Party Compl. ¶¶ 10, 149, 152, 157, 160, 161.

On December 29, 2025, Mace, through counsel, filed a Memorandum in Opposition toThird-Party Plaintiff Patrick Bryant's Motion for Temporary Restraining Order and Motion to Vacate or Modify Gag Order ("Motion to Vacate"). ECF 3-1 pp. 87–113. Within the Motion to Vacate, Mace argued that the Gag Order "is a violation not only of Congresswoman Mace's

> fundamental rights to freedom of speech and due process but also, because the Congresswoman is a federal legislator, the protections afforded her by the Speech or Debate Clause of the United States Constitution." *Id.* at 88. Mace also argued that the Gag Order improperly restrained her from disseminating information and materials "that are indisputably of public interest and concern to her constituents." *Id.*
>
> On January 12, 2026, Bryant and Bowman jointly filed an Order to Show Cause and Motion for Civil Contempt, moving "for an Order to Show Cause holding Third Party Defendant Nancy Ruth Mace in civil contempt for repeated violations of this Court's November 26, 2025 Gag Order." ECF No. 7-4, Contempt Motion. The Contempt Motion alleges that Mace violated the Gag Order by: (1) posting about Bowman on her verified X account @RepNancyMace; (2) posting "IMPEACH ALL CORRUPT JUDGES" and "Especially including those in South Carolina SPECIFICALLY" on her X account @RepNancyMace on November 28, 2025; (3) posting a video to her Instagram account @repnancymace on December 27, 2025, in which she discussed Bowman and this litigation; and (4) a newsletter email sent by Mace's Congressional Office on December 1, 2025, in which she renewed her accusations against Bryant, and represented that new women had come forward to report abuse, claims of child sexual materials, and rape. ECF No. 7-4 at 5–6.
>
> On January 13, 2026, the state court issued a Supplemental Gag Order, clarifying that nothing in the Gag Order shall be construed to prohibit or restrict: "a. Communications with law enforcement, local, state or federal agencies, including Solicitor's and Attorney General Offices with respect to active criminal investigations; b. Legislative bodies (federal and state) with respect to active criminal investigations; c. Statements or disclosures required by Court Order, subpoena, or any other lawful process." ECF 1-4 (further stating, "The original Order and this Supplemental Order shall remain in full force and effect unless changed by a future Court Order").

(ECF No. 22 at 2-4.)

As the Magistrate Judge properly explained in her Report, pursuant to the federal officer removal statute, on which Mace relies in all three of her notices of removal, a civil action that is commenced in state court against "[a]ny officer of either House of Congress, for or relating to any act in the discharge of his official duty under an order of such House," or against the "United States or any agency thereof or any officer (or any person acting

under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office," may be removed by that officer to the district court of the United States for the district and division where the state court action is pending. 28 U.S.C. § 1442(a)(1), (4). For purposes of § 1442, "civil action" includes "any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued." 28 U.S.C. § 1442(d)(1). "If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court." *Id.*

When removing a civil action from state court, a defendant must file a notice of removal "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." *Id.* 28 U.S.C. § 1446(b)(1). That being said, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3).

In her Report, the Magistrate Judge found "that Mace had notice of the removability of the case pursuant to 28 U.S.C. § 1442 by December 12, 2025, the date that she asserted federal defenses in her Answer to the Third-Party Complaint." (ECF No. 22 at 10.) In so finding, the Magistrate Judge noted that § 1442(a) creates an exception to the well-pleaded complaint rule, which would otherwise prohibit removal even if a federal defense was alleged. (*Id.*) *See also Maryland v. 3M Co.*, 130 F.4th 380, 388 (4th Cir.

2025) (citation and quotation marks omitted), *cert. denied*, 224 L. Ed. 2d 168 (Mar. 2, 2026) (explaining that § 1442(a) creates "an exception to the well-pleaded complaint rule insofar as it allows suits against federal officers to be removed despite the nonfederal cast of the complaint, and reflects a congressional policy that federal officers, and indeed the Federal Government itself, require the protection of a federal forum"); *Mesa v. California*, 489 U.S. 121, 136 (1989) (explaining that § 1442(a) "serves to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense were alleged"); *W. Va. State Univ. Bd. of Governors v. Dow Chem. Co.*, 23 F.4th 288, 297 (4th Cir. 2022) (explaining that § 1442(a) creates "an exception to the well-pleaded complaint rule, which, absent diversity, prohibits removal unless a federal question appears on the face of the complaint"). As the Magistrate Judge noted, Mace raised federal defenses arising out of her official duties in her December 12 answer and was thus on notice at least by this date that the case was subject to removal pursuant to § 1442(a). (ECF No. 22 at 10-11.)

Additionally, the Magistrate Judge found that Mace knew as of December 29, 2025, when she reasserted some of her federal defenses in her motion to vacate or modify gag order, that the gag order could be interpreted as "relating to any act under color of" her office or related to "any act in the discharge of [her] official duty" as a congresswoman. 28 U.S.C. §§ 1442(a)(1) and (4). Thus, the Magistrate Judge explained that even if the 30-day clock did not begin to run until December 29, 2025, it would have expired the day before she filed her notices of removal, rendering the removal untimely. (*Id.* at 11.)

In her objections to the Magistrate Judge's Report, Mace asserts that the Magistrate Judge applied the wrong legal standard and conflated § 1442's exception to the well-

pleaded complaint rule with the question of when the removal clock begins to run under § 1446(b)(3). (ECF No. 26 at 2–4.) According to Mace, "removability first became ascertainable on January 12, 2026, the first paper that, on its face, sought to punish Rep. Mace for acts within the legitimate legislative sphere." (*Id.* at 2.) Stated differently, Mace asserts that "[t]he proper inquiry is whether a qualifying paper made removability ascertainable, not whether Rep. Mace subjectively understood that she possessed a federal defense." (*Id.* at 3-4.)

Next, Mace objects that the Magistrate Judge erred in treating Mace's answer as the "paper" that triggered the removal clock, asserting that is incorrect because (1) "a defendant's answer is not 'an amended pleading, motion, order or other paper' received by the defendant within the meaning of § 1446(b)(3)" and (2) the assertion of a federal defense does not, standing alone, establish notice that a case is subject to removal. (*Id.* at 4-5.)

As a third objection, Mace asserts that the Magistrate Judge erred in her alternative holding that the removal clock was triggered by Mace's motion to vacate filed on December 29, 2025, again arguing that because it was Mace's own filing it was not a "paper" within the meaning of § 1446(b)(3). (*Id.* at 6.) Additionally, Mace argues that the third-party complaint filed on November 6, 2025, did not trigger the removal clock because it affirmatively disclaimed any connection between Mace's challenged conduct and her congressional office. (*Id.*) And Mace likewise asserts that the gag order issued *sua sponte* by the state court on November 26, 2025, did not make removability ascertainable because, by its terms, it did not and could not reach conduct within the "legitimate legislative sphere." (*Id.* at 7.)

Lastly, Mace repeats her argument that the January 12, 2026, contempt motion is the first paper from which removability was ascertainable, making her removal timely, and she asserts that removal of the entire action is proper under § 1442. (*Id.* at 7.)

After a careful, *de novo* review of the matters before it, the Court fully agrees with the Magistrate Judge that Mace's removal was untimely by several measures. What is more, however, the Court also fully agrees with Bryant that the Magistrate Judge actually provided Mace too much leeway by focusing on her responsive filings and not upon the earlier filings that made it clear that the case related to Mace's role as a United States Representative.[2] (*See* ECF No. 35 at 4-5.) Indeed, the Court agrees with Bryant that his motion for a temporary restraining order against Mace, which was filed on November 17, 2025, unequivocally related to acts in the discharge of Mace's official duty, as Bryant plainly sought to restrain Mace from using, *inter alia*, her "Congressional social media account, campaign account, press conference, interview, podcast, or communications with reporters" to dispel information. (ECF No. 7-3 at 5.) The motion at issue also specifically referenced Mace's Congressional speeches and accused her of "hiding behind Congressional immunity" and of using her official Congressional social media accounts to post unverified information. (*Id.* at 6, 7, 9, n.3.) Thus, the Court finds that the November 17 motion was one "from which it may first be ascertained that the case is one which is or has become removable" under § 1442. 28 U.S.C. § 1446(b)(3). Mace, therefore, was required to remove this action on or before December 17, 2025, but did not do so until

---

[2] Of note, this Court's analysis comports with Mace's reasoning in her objections, insofar as she contends the Magistrate Judge erred in treating *Mace's own filings* as "an amended pleading, motion, order or other paper" under 28 U.S.C. § 1446(b)(3).

January 29, 2026.

Furthermore, the Court finds that the state court's *sua sponte* gag order itself, which was issued on November 26 and prohibited "any comment about any aspect of this case," and plainly anticipated First Amendment arguments in response, also made it clear that the case had become removable under § 1442. (*See* ECF No. 1-3 at 2–3.) Thus, even assuming that Mace's removal period was triggered by the later November 26 gag order, which was an "order" from which Mace could ascertain removability under § 1442, Mace's January 29 removal still came too late.[3]

## CONCLUSION

Based on the foregoing, the Court affirms the Magistrate Judge's Report as modified herein (ECF No. 22), and the Court finds that Mace's removal was untimely. Accordingly, the Court overrules Mace's objections (ECF No. 26) and grants Bryant's motion to remand (ECF No. 7) and remands this matter to the Court of Common Pleas for the Ninth Judicial Circuit. Additionally, because the Court finds that no hearing on this matter is necessary, the Court denies Mace's motion for oral argument (ECF No. 27). Lastly, the Court directs the Clerk to terminate as moot civil action number 2:26-306, which was effectively subsumed into this civil action.

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
United States District Judge

September 4, 2026
Charleston, South Carolina

[3] And of course, if Mace's December 12 answer or her December 29 motion triggered the removal period, as found by the Magistrate Judge, then Mace's removal on January 29 was still untimely.